1  DAVID A. BELCHER (SBN 330166)
   david.belcher@faegredrinker.com
2  FAEGRE DRINKER BIDDLE & REATH LLP
   1800 Century Park East, Suite 1500
3  Los Angeles, California 90067
   Telephone:  +1 310 203 4000
4  Facsimile:   +1 310 229 1285

5  Attorneys for Defendant
   COOPERATIVE REGIONS OF ORGANIC
6  PRODUCER POOLS d/b/a ORGANIC
   VALLEY, A WISCONSIN CORPORATION

7

8

9              **UNITED STATES DISTRICT COURT**

10            **NORTHERN DISTRICT OF CALIFORNIA**

11

12 AMBER TAKAHASHI-MENDOZA, an          Case No. 3:22-cv-5086
   individual, on behalf of herself and all
13 others similarly situated,                [Alameda County Superior Court
                                             Case No. 22CV014564]
14              Plaintiff,
                                          **NOTICE OF REMOVAL BY**
15       v.                               **DEFENDANT COOPERATIVE**
                                          **REGIONS OF ORGANIC**
16 COOPERATIVE REGIONS OF                 **PRODUCER POOLS D/B/A**
   ORGANIC PRODUCER POOLS D/B/A           **ORGANIC VALLEY PURSUANT**
17 ORGANIC VALLEY, a Wisconsin            **TO 28 U.S.C. § 1332(D)**
   Corporation,
18                                        **[DIVERSITY JURISDICTION**
                Defendant.                **UNDER CLASS ACTION**
19                                        **FAIRNESS ACT]**

20

21

22

23

24

25

26

27

28

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

US.351761738.04

**PLEASE TAKE NOTICE** that Defendant Cooperative Regions of Organic Producer Pools d/b/a Organic Valley ("CROPP")[1] hereby removes the above-captioned state court action for Alameda County Superior Court, Case No. 22CV014564 (the "Action"), to this Court pursuant to U.S.C. §§ 1332(d), 1441, 1453, and 1446. The grounds for removal are as follows:

1.      A defendant has a right of removal where an action is brought in a state court over which the district court has original jurisdiction. 28 U.S.C. § 1441.

2.      This Court also has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because (1) the Action is brought on behalf of a putative class consisting of more than 100 members; (2) minimal diversity exists between the parties; and (3) the amount in controversy exceeds $5,000,000.

3.      Venue is proper in this district because Alameda County Superior Court is within the Northern District of California, and CROPP has complied with the procedural requirements of 28 U.S.C. §§ 1453 and 1446.

## BACKGROUND

4.      Plaintiff filed her original complaint on July 19, 2022. CROPP accepted service of the original complaint on August 9, 2022.  A true and correct copy of that Summons and Complaint is attached hereto as **Exhibit A**, including the signed Notice and Acknowledgment of Receipt form that effectuated service on CROPP on August 9.

5.      Plaintiff alleges in her Complaint that CROPP made "false and misleading" representations – such as "Humane Animal Practices" – on the package labeling of CROPP's Organic Valley brand dairy products. Compl. ¶ 3.

6.      Plaintiff alleges that calling CROPP's practices "humane" is misleading to reasonable consumers because CROPP's practices are not "humane" and do not comport with "established 'highest standards' of animal care." *Id.*

---

[1] Plaintiff incorrectly describes CROPP in the case caption as a "Wisconsin Corporation."  CROPP is a Wisconsin cooperative, not a corporation.

US.351761738.04

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

Plaintiff thus alleges that CROPP's label statements deceive consumers about the "true nature of its business practices and cause Plaintiff and other consumers to pay premium prices." *Id.* ¶ 5.

7.     Plaintiff brings this Action on behalf of herself and a proposed class defined to include "[e]very person in California who purchased Organic Valley dairy products which Defendant represented were made with any of the following qualities: a 'commitment to the highest … animal care practices,' 'humane' practices, 'high' or 'highest' standards of animal care that 'go above and beyond other standards,' or cows that are 'social.'" *Id.* ¶ 63.

8.     Plaintiff asserts claims under California's Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750-1785 and Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq*. She seeks compensatory damages and/or restitution, punitive damages, injunctive relief, declaratory relief, and attorneys' fees. *Id.* ¶¶ 6, 73-91 Prayer for Relief (p. 31).

## **REMOVAL IS PROPER**

### I.     The Court has original jurisdiction under 28 U.S.C. § 1332(d).

9.     Under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), federal district courts have original jurisdiction over any putative class action in which (1) there are at least 100 putative class members, (2) any putative class member is a citizen of a state different from any defendant, and (3) the aggregate claims of the members of the putative class exceed $5 million. *See Jordan v. Nationstar Mortg., LLC*, 781 F.3d 1178, 1182 (9th Cir. 2015); 28 U.S.C. § 1332(d). Here, all three requirements are met.

### A.     The putative class consists of more than 100 members.

10.     CAFA defines "class action" as "any civil action filed under rule 23 of the Rules of Civil Procedure or similar state statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B).

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

US.351761738.04

3

NOTICE OF REMOVAL
Case No. 3:22-cv-5086

11.     Here, the Complaint is titled as a "Class Action" and is brought by Plaintiff on behalf of herself and "all others similarly situated." **Ex. A**. Under the heading "Numerosity," Plaintiff alleges that there are "tens of thousands, if not more" Class Members. Compl. ¶ 64.

12.     The requirement of at least 100 putative class members is satisfied on the face of the Complaint. *See Visendi v. Bank of Am., N.A.*, 733 F.3d 863, 868 (9th Cir. 2013) (finding that action was properly removed because complaint alleged claims on behalf of more than 100 persons); s*ee also Hendricks v. Oppenheimerfunds, Inc.*, 2010 WL 3834569, at * 1 (C.D. Ill. Sept. 15, 2010) (finding that defendants "may rely on [plaintiff's] allegations in the Complaint as evidence" to meet jurisdictional requirements).

**B.     Minimal diversity exists between the parties.**

13.     CAFA requires only "minimal diversity." That is, the citizenship of at least one putative class member must differ from that of at least one defendant. *See* 28 U.S.C. §§ 1332(d)(2)(A).

14.     For purposes of diversity of citizenship, a business organized as a corporation is "deemed to be a citizen of a State by which it has been incorporated" and also a citizen "of the State where it has its principal place of business." *Wachovia Bank v. Schmidt*, 546 U.S. 303, 306, (2006) (citing U.S.C. 28 § 1332(c)(1)).

15.     CROPP is a cooperative incorporated under Wisconsin law, Wis. Stat. § 185.01, *et seq.*, with its principal place of business in La Farge, Wisconsin. For purposes of diversity jurisdiction, a cooperative is treated as a corporation where the cooperative has been incorporated under state law. *Kuntz v. Lamar Corp.*, 385 F.3d 1177, 1183 (9th Cir. 2004). Accordingly, CROPP is deemed a citizen of Wisconsin.[2]

---

[2] Even if CROPP were treated as an unincorporated association, it still would be deemed a citizen of Wisconsin because, under CAFA, "an unincorporated association shall be deemed to be a citizen of the State where it has its principal

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

US.351761738.04

4

NOTICE OF REMOVAL
Case No. 3:22-cv-5086

16.     "Class members" include "persons (named or unnamed) who fall within the definition of the proposed or certified class." *Standard Fire Ins. Co. v. Knowles,* 568 U.S. 588, 592 (2013) (quoting 28 U.S.C. § 1332(d)(1)(D)).

17.     The Complaint alleges that Plaintiff is a resident of Oroville, California, and upon information and belief, has the intention to remain there. Compl. ¶ 10. Plaintiff brings this putative class action on behalf of all persons in California who purchased CROPP's Organic Valley dairy products (*id.* ¶ 63), further establishing her California residence. Because Plaintiff is domiciled in California, she is a citizen of California for purposes of determining diversity.

18.     CAFA's minimal diversity requirement is therefore satisfied because Plaintiff and CROPP are citizens of different "States." *See* 28 U.S.C. §§ 1332(d)(2)(A).

**C.     The amount-in-controversy requirement is satisfied.**

19.     This Action meets CAFA's amount-in-controversy requirement because Plaintiff's Complaint seeks relief that, in the aggregate, exceeds CAFA's $5 million jurisdictional threshold.

20.     Under CAFA, the "claims of the individual class members must be aggregated." 28 U.S.C. § 1332(d)(6). "[T]he [CAFA] statute tells the District Court to determine whether it has jurisdiction by adding up the value of the claim of each person who falls within the . . . proposed class and determine whether the resulting sum exceeds $5 million." *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 593 (2013). If the Court is uncertain whether the amount in controversy exceeds $5 million, then "the court should err in favor of exercising jurisdiction over the case." S. Rep. No. 109-14, at 42 (2005).

21.     A notice of removal "need include only a plausible allegation that the

place of business and the State under whose laws it is organized." 28 U.S.C. § 1332(d)(10); *see also Davis v. HSBC Bank Nev.*, 557 F.3d 1026, 1032 n.13 (9th Cir. 2009) (noting that CAFA dissolved the traditional rule that an unincorporated association shares the citizenship of its members for the purpose of diversity).

US.351761738.04

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

5                                         NOTICE OF REMOVAL
Case No. 3:22-cv-5086

1   amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin*

2   *Operating Co. LLC v. Owens*, 574 U.S. 81, 89 (2014) (citing 28 U.S.C. § 1446(a)).

3   Evidence is only required if "the plaintiff contests, or the court questions, the

4   defendant's allegation." *Id.*

5       22.     Although the Complaint does not demand a specific dollar amount in

6   damages, the preponderance of the evidence demonstrates that the matter in

7   controversy in the aggregated claims of the proposed class exceeds $5,000,000. *See*

8   28 U.S.C. § 1446(c)(2)(B) (requisite amount in controversy may be demonstrated

9   by "preponderance of the evidence"). For example, Plaintiff's Complaint alleges

10  that the products at issue in the suit have provided CROPP more than $1.1 billion in

11  annual sales, including more than $1.2 billion in recorded sales for the year ending

12  2020. Compl. ¶¶ 5, 11. As such, the aggregated claims of the proposed class

13  plausibly exceed $5,000,000.

14      23.     Plaintiff and the putative class seek restitution of all money obtained

15  by CROPP through its allegedly false and misleading representations regarding the

16  products at issue in the suit. Compl. ¶ 65. As described in the Declaration of Naomi

17  Stone ("Stone Decl.") filed in support of this Notice of Removal, the gross sales of

18  CROPP's Organic Valley dairy products in California only from January 2019

19  through July 2022[3] exceeded $ 100 million.  *See* Stone Decl. ¶ 4.  Thus, the

20  restitution amount in controversy alone far exceeds $5,000,000.

21      24.     Plaintiff also seeks, on behalf of herself and the proposed class,

22  compensatory damages (which includes the aforementioned restitution), punitive

23  damages, injunctive relief, and attorneys' fees (which Plaintiff may recover if she

24  prevails on her CLRA claim, see Cal. Civ. Code § 1780(e)). Compl. ¶¶ 6, 73-91

25  Prayer for Relief (p. 31). Each of these amounts should be considered with respect

26  to the amount in controversy. *Fritsch v. Swift Transportation Co. of Arizona, LLC*,

27

28

---

[3] Plaintiff does not define a proposed class period in the Complaint.  Given that
Plaintiff filed suit on July 19, 2022 and the UCL claim is subject to a 4-year statute
of limitations, the class period could begin as early as July 19, 2018.
US.351761738.04

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

6                                                    NOTICE OF REMOVAL
                                                     Case No. 3:22-cv-5086

899 F.3d 785, 793 (9th Cir. 2018) ("Among other items, the amount in controversy includes damages (compensatory, punitive, or otherwise), the costs of complying with an injunction, and attorneys' fees awarded under fee-shifting statutes or contract.").

25.     A punitive damages award could equal the compensatory damages, further confirming that the amount-in-controversy requirement is met. *See Bayol v. Zipcar, Inc.*, 2015 WL 4931756, at \*9 (N.D. Cal. Aug. 18, 2015) (in putative consumer class action alleging violations of the CLRA and UCL, using a "conservative 1:1 ratio for punitive to compensatory damages, and using Zipcar's estimate of late fees collected from California residents as a conservative estimate of compensatory damages," for amount-in-controversy analysis).

26.     The costs of complying with an injunction, which could require CROPP to modify its marketing, advertising, and packaging, could amount to several hundred thousand dollars, if not more.

27.      Together, the amounts put in controversy by Plaintiff's request for class-wide restitution, compensatory damages, punitive damages, and injunctive relief, will, by a preponderance of the evidence, exceed \$5,000,000. *See id.* (where compensatory damages were estimated at \$2.8 million, finding that addition of punitive damages, attorneys' fees, and cost of injunctive relief raised total amount in controversy above \$7 million). Accordingly, CAFA's amount in controversy requirement is satisfied. *See* 28 U.S.C. § 1332(d)(2).

**D.     No CAFA exceptions apply.**

28.     This Action does not fall within any exclusion to CAFA jurisdiction under 28 U.S.C. § 1332(d) and Plaintiff has the burden of proving otherwise. *See Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1021 (9th Cir. 2007).

**II.     Removal is timely and the procedural requirements for removal are satisfied.**

29.     This Notice of Removal is filed with this Court within 30 days after

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

US.351761738.04

7

NOTICE OF REMOVAL
Case No. 3:22-cv-5086

Plaintiff completed service of the Complaint to CROPP and is therefore timely pursuant to 28 U.S.C. § 1446(b)(1).

30.     The United States District Court for the Northern District of California is the federal judicial district encompassing the Alameda County Superior Court, where Plaintiff originally filed this suit, making this the proper federal district for removal of this case to federal court. 28 U.S.C. § 1441(a).

31.     Attached as **Exhibit B** is a copy of all process, pleadings, papers, or orders that have been filed in this action in the Alameda County Superior Court.

32.     Pursuant to 28 U.S.C. § 1446(d), CROPP will promptly file a copy of this Notice of Removal with the clerk of the Alameda County Superior Court and will serve a copy of same upon counsel for Plaintiff.

## III.   Non-waiver of defenses.

33.     If any question arises as to the propriety of the removal of this action, or in the event the Court considers remand *sua sponte*, Defendant requests the opportunity to brief any disputed issues and to present oral argument in support of its position that this action is properly removable. *See Dart Cherokee Basin Operating Co.*, 135 S. Ct. at 554.

34.     Nothing in this Notice of Removal shall be interpreted as a waiver or relinquishment of Defendant's right to assert any defense or affirmative matter.

35.     CROPP reserves the right to amend or supplement this Notice of Removal.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

US.351761738.04

8

NOTICE OF REMOVAL
Case No. 3:22-cv-5086

1    WHEREFORE, Defendant hereby removes the above-captioned case to this

2    Court.

3

4    Dated:  September 7, 2022                    Respectfully submitted,

5                                                FAEGRE DRINKER BIDDLE & REATH

6                                                LLP

7                                                By:_____

8                                                      David A. Belcher
                                                       Tyler A. Young (*Pro Hac Vice* to be
9                                                      submitted)

10                                               Attorneys for Defendant
                                                 COOPERATIVE REGIONS OF ORGANIC
11                                               PRODUCER POOLS d/b/a ORGANIC
                                                 VALLEY, A WISCONSIN
12                                               CORPORATION

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FAEGRE DRINKER
BIDDLE & REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

US.351761738.04

9                                                NOTICE OF REMOVAL
                                                 Case No. 3:22-cv-5086

# EXHIBIT A

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**ELECTRONICALLY FILED**
Superior Court of California
County of Alameda
07/19/2022
Chad Finke, Executive Officer / Clerk of the Court
By: _____ C. Clark _____ Deputy

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
Cooperative Regions of Organic Producer Pools d/b/a Organic Valley, a Wisconsin Corporation.

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
AMBER TAKAHASHI-MENDOZA, an individual, on behalf of herself and all others similarly situated.

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is: | CASE NUMBER: *(Número del Caso):*
*(El nombre y dirección de la corte es):*
René C. Davidson Courthouse, 1225 Fallon Street, Oakland, CA 94612 | **22CV014564**

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Helen I. Zeldes; Joshua A. Fields; Aya Dardari; SSHHZ, LLP, 501 W. Broadway, Suite 800 San Diego, CA 92101 Tel:  (619) 400-4990

DATE: 07/19/2022  Chad Finke, Executive Officer / Clerk of the Court   Clerk, by   C. Clark   , Deputy
*(Fecha)*                                                              *(Secretario)*            *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario  Proof of Service of Summons,  (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

1

**SCHONBRUN SEPLOW HARRIS**
**HOFFMAN & ZELDES LLP**

2
HELEN I. ZELDES (SBN 220051)
*hzeldes@sshhzlaw.com*

3
JOSHUA A. FIELDS (SBN 242938)
*jfields@sshhzlaw.com*

4
AYA DARDARI (SBN 344039)
*adardari@sshhzlaw.com*

5
501 W. Broadway, Suite 800
San Diego, CA 92101

6
Tel: (619) 400-4990

7
**PETA Foundation**
ASHER SMITH (*pro hac vice* application pending)

8
*ashers@petaf.org*
TALA DIBENEDETTO (*pro hac vice* application pending)

9
*talad@petaf.org*
2154 West Sunset Boulevard

10
Los Angeles, CA 90026
Tel: (323) 210-2263

11
Fax: (213) 484-1648

12
*Counsel for Plaintiff Amber Takahashi-*
*Mendoza, an individual, on behalf of herself*
*and all others similarly situated.*

13

14

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**COUNTY OF ALAMEDA**

15

16
Amber Takahashi-Mendoza, an individual, on behalf of herself and all others similarly situated,

17
*Plaintiff*,

18

19
v.

20
Cooperative Regions of Organic Producer Pools d/b/a Organic Valley, a Wisconsin Corporation.

21
*Defendant*.

22

23

Case No. **22CV014564**

**CLASS ACTION**

**COMPLAINT FOR:**

1. **Violation of California's Consumers Legal Remedies Act ("CLRA"); Cal. Civil Code § 1750 *et seq.***
2. **Violation of California's Unfair Competition Law ("UCL"); Bus. & Prof. Code § 17200 *et seq.***

**JURY TRIAL DEMANDED**

24

25

26

27

28

ELECTRONICALLY FILED
Superior Court of California,
County of Alameda
07/19/2022 at 09:03:30 AM
By: Cheryl Clark,
Deputy Clerk

Plaintiff Amber Takahashi-Mendoza ("Plaintiff" or "Takahashi-Mendoza") brings this action, on behalf of herself and all others similarly situated against Cooperative Regions of Organic Producer Pools d/b/a Organic Valley (collectively "Defendant" or "Organic Valley"). Plaintiff alleges the following based upon information and belief, the investigation of counsel, and personal knowledge as to the allegations pertaining to herself.

**NATURE OF THE CASE**

1.      Defendant, one of the largest sellers of organic milk products in the United States, takes in outsized profits off the booming market for humanely produced goods by labeling its products as being manufactured through "Humane Animal Practices."  In reality, Defendant knows its milk is not.

2.      When Plaintiff and others buy "Organic Valley" brand dairy products, they are told they are supporting humane farming practices and pay premium prices for doing so. Instead, Defendant sells them products made through needless cruelty to animals.

3.      Unbeknownst to consumers, the dairy products they purchase come from cows whose calves are stripped from them within days or hours of birth. These calves are then reared in isolation hutches, often in poor health without vital socialization and natural sustenance. Male calves are quickly sold for eventual commercial slaughter, while female calves go on to give birth to calves who are immediately taken away from them. These practices are not "humane" and do not comport with established "highest standards" of animal care "above and beyond other standards"—including provision of "social" settings—that Defendant touts on its labels, but instead renders them false and misleading to reasonable consumers such as Plaintiff. This is especially true given the context of the representations—including, for example, cartons showing a mother cow and calf together in an open field, in direct contrast to Defendant's actual practices.

4.      Defendant's representations are important to consumers seeking humane alternatives to conventionally-produced dairy products. Research shows these consumers are willing to pay more for milk from production systems that do not involve premature separation of cows and calves. Defendant and others in the industry know it would pose a risk to dairy sellers' outsized profits if consumers learned the truth: that dairy products found in every grocery store—even many of those marketed as "humane"

and sold at premium prices like Defendant's—are ruthless products of socially-deprived calves prematurely separated from their mothers.

5.     Defendant's label statements, targeted to consumers who care about the humane treatment of animals, deceive consumers about the true nature of its business practices and cause Plaintiff and other consumers to pay premium prices. It is these premium prices that regularly provide Defendant more than $1.1 billion in annual sales, including more than $1.2 billion in recorded sales for the year ending 2020.

6.     Defendant should not be allowed to continue its cruelty and fraud. Plaintiff thus brings this action pursuant to: (i) California Business & Professions Code §§ 17200, *et seq.* (the Unfair Competition Law or "UCL"); and (ii) California Civil Code §§ 1750, *et seq.* (the Consumers Legal Remedies Act or "CLRA"). Plaintiff brings this action on behalf of a California class for restitution and any other relief deemed appropriate by the Court, including without limitation, damages, exemplary damages, declaratory relief holding that Defendant's conduct violates both California's consumer protection laws and its penal code, and injunctive relief in the form of an order to remedy and put an end to Defendant's unlawful conduct.

## I.     JURISDICTION AND VENUE

7.     This Court has jurisdiction over all causes of action asserted herein under the California Constitution.

8.     This Court has jurisdiction over Defendant because it carries on a continuous and systematic part of its general business within the State of California.

9.     Venue is proper in this county pursuant to California Civil Code § 1780(d) because Defendant does business here.

## II.     THE PARTIES

10.     Plaintiff Amber Takahashi-Mendoza lives in Oroville, California, and grew up visiting her uncle's farm. Her experience observing cows with their calves, and calves playing with their companions, influenced her own dietary and purchasing habits. When Ms. Takahashi-Mendoza purchases milk for house guests, she pays substantial premium prices in an effort to ensure she is supporting humane husbandry practices. After seeing Defendant's advertising on its milk cartons, including material representations referenced herein, she began regularly purchasing Defendant's milk

at a local grocery store. Based on Defendant's representations, Ms. Takahashi-Mendoza believed Defendant's milk came from cows treated in a humane manner. Had she known the truth, she would not have paid premium prices for Defendant's milk or would not have purchased it at all. Ms. Takahashi-Mendoza would consider purchasing Defendant's milk again if Defendant were to treat cows in a manner consistent with its advertising.

11.     Defendant Organic Valley—headquartered in La Farge, Wisconsin—is one of the largest organic dairy sellers in the world. Defendant markets products in all 50 states and exports to 25 countries. It is organized for the express purpose of "adding value to, and marketing, its members' production," and does so to great effect—regularly reporting annual revenue of more than $1.1 billion, including recorded sales of $1.2 billion for the year ending 2020.[1] At least 18 of Defendant's member farms—whose welfare policies and practices Defendant has oversight and control over, and regularly inspects and investigates— are based in California. Defendant markets and sells its products across California, including in this county.

## III.     FACTUAL BACKGROUND

### *Humane Treatment:  What 'Highest Standards' Mean for Mother Cows and Newborn Calves*

12.     Various third-party animal welfare standards for cows used in dairy production set minimum thresholds for what the "Highest Standards of Animal Care" would look like with respect to separation of mother cow and calf. For example, one prominent certifier recommends husbandry systems ***"that allow young calves to remain in the herd with their mothers until weaning occurs naturally,"*** with separation of mother cow and calf to occur only when doing so can "cause as little stress as possible."[2] To qualify for the top two tiers of another certifier's six levels of certification, sellers are required to allow calves to ***stay with their mothers for at least 168 days***, or else to make sure calves are

---

[1] Organic Valley, *Press Release: Organic Valley Upholds Mission to Sustain Family Farms, Hits Record $1.2 Billion in Sales* (Jun. 9, 2021), available at
https://www.organicvalley.coop/newspress/organic-valley-upholds-mission-sustain-family-farms-hits-record-12-billion-sales/.

[2] Animal Welfare Approved by AGW, *Certified Animal Welfare Approved by AGW Standards for Dairy Cattle* (last visited May 31, 2022), available at https://agreenerworld.org/wp-content/uploads/2022/02/AWA-Dairy-Cattle-Standards-2021-v2.pdf.

fostered for at least 168 days by another nursing cow who is assigned no more than three calves.[3] Despite its promises, Defendant, on information and belief, does not meet these standards—and so inflicts undue suffering.

### *Cows—Both Mothers and Calves—Are Sensitive, Intelligent Beings With Distinct Personalities*

13.     Studies have shown cows are able to think and observe. They routinely demonstrate robust and rapid learning abilities and express joy when they successfully learn something new. Cows perform well in maze tests and can retain this knowledge for days or even weeks.[4] Cows are also capable of extrapolating knowledge from smaller pieces of information. For example, in one study, cows taught to follow a trolley for food were able, after the trolley moved into a tunnel, to predict the trajectory of the trolley and meet it at the far end of the tunnel.[5]

14.     Cows are also capable of an advanced degree of visual discrimination. Studies have shown they are capable of differentiating not only between shapes, colors, and brightness, but also among more complex dimensions, such as between members of their own species and other animals, and between human handlers whose interactions with the cows are more or less rough, gentle, stingy, or generous.[6]

15.     Cows are acutely sensitive. They experience a wide range of both positive and negative emotional states. Positive emotions include joy, pleasure, and excitement, often manifesting in, for example, play behaviors. But cows can also experience fear and frustration. Fear can manifest in behaviors such as hesitancy to enter new spaces, defecation, vocalizations, and escape attempts. More subtle physical changes are also associated with shifts in emotion, such as nasal temperatures, ear posture, heart rate, and eye widening in which a higher percentage of white space is visible below a cow's upper eyelid. The latter, in particular, is associated with frustration and fear, as are other negative behaviors, such as aggression, repetitive pacing, certain vocalizations, and head-shaking.

//

---

[3] Global Animal Partnership, *5-Step® Animal Welfare Pilot Standards for Dairy Cattle v1.1* (Dec. 9, 2021), available at https://globalanimalpartnership.org/wp-content/uploads/2022/01/20211209-G.A.P.-5-Step-Standards-for-Dairy-Cattle-v1.1.pdf.

[4] *See, e.g.,* Lori Marino & Kristin Allen, *The Psychology of Cows*, 4(4) Animal Behavior & Cognition 474, 479 (2017), https://dx.doi.org/10.26451/abc.04.04.06.2017.

[5] *See, e.g., id.* at 477.

[6] *See, e.g., id.* at 478.

16.     They are also very social animals. Like humans, cows are capable of emotional contagion—the spread of positive or negative emotions throughout a group. When one cow exhibits fear or distress in response to a stimulus, other cows who witness her response may also experience fear or distress. Cows also provide emotional support to one another. Studies have shown that following a stressful event, cows will prioritize seeking out a non-stressed companion over food.[7]

17.     Unsurprisingly, cows' cognitive, emotional, and physical wellbeing are all inextricably linked to their social needs. As elaborated below, social rearing and experiences, particularly early in life, are a necessary and crucial part of normal psychological development in cows just as they are in humans. Cows are social herd animals who crave companionship, and calves raised together, as they would be in more natural settings, learn from each other. Bonds between mother cows and their babies from birth through the months-long, normal weaning process are similarly vital to cow development and wellbeing. When cows are allowed to meet these crucial needs, they can thrive. When these needs are unfulfilled, they suffer.

### *Defendant's Advertising and Resulting Premium Pricing Induces Justified Reliance*

18.     An ever-growing population of American consumers believes it is important that the food industry treat farmed animals—including cows used by the dairy industry—humanely, and with attention to their needs and natural behaviors. Like Plaintiff, many consumers base their purchasing decisions on their perceptions of animal welfare and are willing to pay a premium to sellers who source their dairy products from cows who are treated well and allowed to engage in natural behaviors, like raising their young.

19.     This is borne out by market research. In recent years, animal welfare claims outpaced growth in claims relating to categories like organic ingredients, non-GMO status, and lack of added hormones.[8] During fiscal year 2019, the United States Department of Agriculture Food Safety and

---

[7] *See, e.g., id.* at 483-84.

[8] Elizabeth Crawford, *SPINS Data Shines Light on Why 'Consumers Returned to Real Dairy Droves During the Pandemic*,' Food Navigator-USA (Jun. 1, 2021), https://www.foodnavigator-usa.com/Article/2021/06/01/SPINS-data-shines-light-on-why-consumers-returned-to-real-dairy-in-droves-during-the-pandemic.

Inspection Service received over 200 label applications with animal-raising claims each week.[9]  A 2018 survey by a research firm supporting foodservice clients found that close to a third of supermarket industry decision-makers are motivated to stock products that promise better animal welfare, and that 70 percent of those stocking products with humane claims report that sales from these products have increased.[10]

20.     Dairy sellers such as Defendant are well aware of, and monitor and report on, consumer expectations, understanding they have massive ramifications for their operations and outsized profits. A 2018 survey by a national research firm found that 76 percent of consumers shopping at conventional grocery stores, and 87 percent of consumers at premium/natural grocery stores, including consumers of dairy products, say they are concerned about the welfare of animals raised for food.[11]  Results were similar across every demographic group.[12]

21.     Defendant, one of the world's largest dairy manufacturers, goes to extensive lengths, while scaling up its intensive milk production, to market itself as uniquely humane even among other sellers of premium priced, animal welfare-branded dairy products. This is not surprising. As Defendant's own vice president of brand management and innovation explained in November 2021, "concerns regarding animal treatment" are "a narrative threatening the dairy industry."[13] But instead of combatting this narrative by rigorously enforcing humane standards, Defendant uses marketing to mask its treatment of cows.

//

---

[9] *Animal Raising Claims Labeling Guidelines Update*, U.S. Dep't of Agric., Food Safety & Inspection Serv. (Sep. 1, 2021), https://www.fsis.usda.gov/sites/default/files/media_file/2021-09/Animal-Raising-Claims-labeling-and-Non-GMO-slides-2021-09-01.pdf.

[10] The American Society for the Prevention of Cruelty to Animals and Technomic Inc., *Understanding Retailers' Animal Welfare Priorities* (2018), available at https://www.aspca.org/sites/default/files/aspca_2018_understanding_retailers_animal_welfare_prioritie s.pdf.

[11] Bob Meadow and Meryl O'Bryan, Results from a Survey of American Consumers, Lake Research Partners (Feb. 1, 2019), available at https://www.aspca.org/sites/default/files/aspca-2018_animal_welfare_labelling_and_consumer_concern_survey.pdf.

[12] *Id.*

[13] Anna Boisseau, *2021 State of the Industry: Milk is on a Long and Winding Road*, DairyFoods (Nov. 5, 2021), available at https://www.dairyfoods.com/articles/95315-2021-state-of-the-industry-milk-is-on-a-long-and-winding-road.

22.   Specifically, Defendant states on its cartons that:

- Organic Valley has a "commitment to the highest . . . animal care practices";

- Organic Valley employs "Humane Animal Practices";

- That these "high standards of animal care go above and beyond" other standards since "the best milk comes from happy cows";

- "We Hold Ourselves to the Highest Standards";

- "OUR COWS ARE SOCIAL AND SO ARE WE";

- Organic Valley farms are "growing real food the right way";

- Organic Valley raises cows with "LOVE."

23.   These messages are prominently displayed to every consumer who may happen upon Defendant's milk cartons in the grocery aisle—frequently, as seen in the exemplary cartons below, alongside suggestive images of human mothers with their own children:









24.     These statements do not appear in isolation. In addition to the idyllic imagery seen above, one of Defendant's current product lines—while making the explicit animal welfare commitments described above—actually depicts an image of what any reasonable consumer would infer to be a mother cow and her calf:



25.     Defendant's representations misled Plaintiff into believing Defendant does not engage in needless, inhumane cruelty toward farmed animals, such as by separating cow mothers and babies within days or hours of birth, or by raising calves in a manner that deprives them of vital social bonding, health, and natural sustenance, or by engaging in practices beneath the requirements of other prominent third-party animal welfare standards. Plaintiff would not have paid a premium price for the products if she had known the true nature of Defendant's practices, as set forth herein. Nor, as elaborated further below, would many other consumers who research has shown are willing to pay more specifically for dairy products from production systems that do not involve premature separation of cows and calves.

26.     Defendant uses these false and misleading representations to induce reliance from reasonable consumers like Plaintiff. Early separation of mother cows from their babies is a particular cruelty of the dairy industry. The babies of many other categories of farmed mammals—such as sheep,

pigs, horses, and cows used for beef—are frequently housed with their mothers for some meaningful period of time. Cows used in dairy production are an exception, one that reasonable consumers are unaware of due to deceptive packaging like Defendant's.

27.     The implications of this for dairy sellers are well understood. As one study published in 2020 put it, research regarding the "overwhelming" views on calf housing options among American youth and adults lends itself to the conclusion that "housing systems that enable greater degrees of behavioral freedom [including socialization] for calves may be more socially sustainable for the dairy sector."[14]   This is consistent with other published studies showing that separation of mother and baby cows is a subject of particular concern, and is considered an unacceptable practice to many reasonable consumers—and linked to such consumers' willingness to pay more.

28.     For example, a 2015 study including hundreds of diverse U.S.-based consumers found significant majorities agreeing that mother and baby cows should not be separated early—even after reviewing common arguments for and against these practices.[15]   Unsurprisingly, these consumers left the study tending to believe cows were cognitively and emotionally complex, and would suffer undue acute and long-lasting psychological, physiological, and behavioral consequences from early maternal separation.

29.     This finding is far from unique. During a study conducted among North American consumers across 2010 and 2011 with a diverse sample of participants, more than three quarters of those with no prior involvement in the dairy industry answered negatively when asked "Should dairy calves be separated from the cow within the first few hours after birth?," citing concerns including the emotional and physiological health of cow mothers and babies.[16]  Notably, "No" was also a popular response to this question among participants with some knowledge of dairy industry standards, such as readers of trade

---

[14] Rielle K. Perttu, Beth A. Ventura, & Marcia I. Endres, *Youth and Adult Public Views of Dairy Calf Housing Options*, 103(9) J. of Dairy Sci. 8507-8517 (Jul. 1, 2020),  https://doi.org/10.3168/jds.2019-17727.

[15] Gesa Busch, Daniel M. Weary, Achim Spiller, & Marina A. von Keyserlingk, *American and German Attitudes Towards Cow-Calf Separation on Dairy Farms*, 12(3) PloS one e0174013 (Mar. 16, 2017), https://doi.org/10.1371/journal.pone.0174013.

[16] Beth A. Ventura , Marina A. von Keyserlingk, Catherine A. Schuppli, & Daniel M. Weary, *Views on Contentious Practices in Dairy Farming: The Case of Early Cow-Calf Separation*, 96(9) J. of Dairy Sci.,  6105–6116. (Sep. 2013), https://doi.org/10.3168/jds.2012-6040.

publications, veterinarians, industry professionals, and even participants recruited at an actual dairy industry conference.[17]

30.    Informed consumers also disapprove of these practices. North American consumers surveyed in 2014 both before and after a self-guided tour of a 500-cow dairy farm emerged more, rather than less, concerned about premature separation of mother and calf.[18]

31.    Some of the most up to date and detailed research into public attitudes toward, and perceptions of, premature separation of mothers and calves was published in early 2022. In that study, researchers surveyed a representative sample of close to 2,000 participants, including 1,487 Americans, who were provided descriptions of cow-calf management systems differing in types of social and maternal contact allowed.[19] The results suggested "low acceptance of any cow-calf management system involving early separation," and that these participants considered "that early separation was a breach of [the] standard of care owed to both cows and calves."[20] All categories of participants, including those who drink milk, expressed unfavorable attitudes "toward all systems involving early separation from the mother, regardless of what form of additional social contact was provided."[21]

32.    Consistent with prior studies, participants explained that their attitudes and willingness to pay premium prices were inextricably linked to their perceptions of animal welfare. Participants expressed willingness to pay the same or more for milk from cows who were not separated from their calves prematurely.[22] This was echoed in qualitative findings offered by participants, who frequently described premature maternal separation as "unnatural," "unacceptable," "inhumane," and "cruel."[23] Some of the responses provided by participants included the following:

---

[17] *Id.*

[18] Beth A. Ventura, Marina A. von Keyserlingk, Hannah Wittman, & Daniel M. Weary, *What Difference Does a Visit Make? Changes in Animal Welfare Perceptions after Interested Citizens Tour a Dairy Farm*, 11(5) PloS one e0154733 (May 31, 2016), https://doi.org/10.1371/journal.pone.0154733.

[19] Lara V. Sirovica, Caroline Ritter, Hendricks, J., Daniel M. Weary, Sumeet Gulati, & Marina A. von Keyserlingk, *Public Attitude Toward and Perceptions of Dairy Cattle Welfare in Cow-Calf Management Systems Differing in Type of Social and Maternal Contact*, 105(4) J. of Dairy Sci. 3248–3268 (Jan. 28, 2022), https://doi.org/10.3168/jds.2021-21344.

[20] *Id.* at 3248.

[21] *Id.* at 3257.

[22] *Id.* at 3258-65

[23] *Id.* at 3261-63.

- "This is disappointing to learn. I think if more customers of dairy milk were educated [on] this process they would be reluctant to purchase dairy milk."

- "I am really saddened to learn this, both as a human being and a lover of animals. It makes me a lot more self-conscious about what I consume as food products and have more thoughts about the process in which these products are created. It is absolutely shocking to hear how cruel and inhuman the process is. The poor animals are disposable and not looked at as living life forms with emotions. Imagine doing this to a person, how appropriate and sane would that be to do? Any baby needs their mother."

- "It's cruel to take a baby away from mother regardless of human or animal."

- "Separating a calf after birth from the mom is totally unacceptable and inappropriate whatever living being it is."

- "I believe that this management system is entirely unethical and cruel."

- "The idea of separating a mother from their offspring is upsetting. Just because they're animals and they can't stand up for themselves, doesn't mean they don't feel the mother-child connection. It is devastating to hear that they are separated right after birth, an offspring needs their mother."

- "The calf should be with the cow, when you separate them it affects them emotionally."

- "[T]he calf is probably scared because [they have been] separated from [their] mother . . . On the flip side the mother is probably super depressed after being separated from her calf."

- "It is inhumane to separate them and not allow natural bonding."

- "I feel the calf should be with his mother cow to nurse as that is the most natural thing in nature to do."

- "There is general awareness that cows and calves have an emotional life and the bond between cows and calves have an emotional life and the bond between cow and calf is a concern if separated because it ultimately ends in distress for the calf."

- "It is cruel to separate a mother and her calf and causes stress and anxiety."

- "The calf needs a lot of immunity [they] only get[] from their cow's (mother's) milk. The calf wants to be healthy and free from diseases, [they] need[] cow milk."

- "This method [not separating cow and calf] results in a healthier calf because the calf is able to receive the antibodies for the mother that is critical for good health."

- "It seems a bit cruel to the calves that won't get the benefits of their own mother's antibodies before they are separated."[24]

### *Defendant's Premature Separation of Mother Cows and Calves Inflicts Undue Suffering*

33.     In more humane settings, mother cows and calves form strong emotional bonds immediately after birth. Just as human mothers and their babies benefit from direct physical contact, cow mothers bond with their babies by rubbing, sniffing, remaining close to, licking, and suckling their calves after birth.



Jo-Anne McArthur / Animal Equality / We Animals Media

34.     Afterwards, mother cows and calves engage in what are referred to as "contact calls," with calves as young as three to five weeks old able to recognize their mothers based on distinct vocal cues. Mother cows remain protective of their calves. For example, in one study, 99 percent of mother cows moved between an unfamiliar approaching vehicle and their calves to provide a protective barrier, despite

[24] *Id.* at 3261-64.

the apparent risk.[25] In another study, mothers who were separated from their calves after only five minutes still recognized their own babies even after 12 hours of separation.[26]

35.     There is also physiological evidence of these bonds. Cow mothers who are separated from their calves display increased eye whites, which often indicates fear, stress, or frustration, in addition to other behavioral signs of trauma. Cow mothers who are reunited with their calves display significantly less eye whites, indicating a more positive, calm emotional state.

36.     Mother-calf bonds can also take on unique, individualized characteristics. As referenced, calves are able to selectively respond to their own mother's calls even after a day of separation. Maternal attention, including time spent nursing, is sensitive to individual differences in calf sex and weight. For example, male calves tend to benefit from more frequent nursing and protective behavior compared with female calves. Additionally, more maternal protection and more frequent nursing occurs when calves are born with lower birth weights.

37.     Nevertheless, Defendant's common practice, despite its advertising indicating otherwise, is to inhumanely separate cow mother and baby immediately after birth. Defendant disclosed to the Cornucopia Institute, an organic industry-aligned third-party, that its calves are "[r]emoved shortly after birth (standard practice)."[27] Thus, within days or potentially even hours of the birth of a baby calf on many of Defendant's farms, each calf is ripped from his or her mother and never returned.

38.     The pain and suffering this inflicts is as immense is it is needless. Mother cows separated from their calves display various signs of acute distress, including pacing, increased urination, weight loss, increase in stress hormone concentration, locomotor activity including searching behavior, and vocalizing. These behaviors can continue for days. **All** mother cows in one study exhibited these signs of distress after separation and chose to stay at one end of their paddock, vocalizing continuously.[28] This includes the loud, high-pitched, wailing bellows such as can be seen and heard at the video excerpted

---

[25] Marino & Allen, *The Psychology of Cows*, *supra* note 4 at 487.
[26] *Id.* at 484.
[27] The Cornucopia Institute, Grassmilk (Organic Valley) (last accessed May 31, 2022), available at https://www.cornucopia.org/scorecard/dairy/grassmilk-organic-valley/.
[28] Marino & Allen, *The Psychology of Cows*, *supra* note 4 at 484.

below. It can also, and often does, include attempts by mother cows to struggle against the removal of their calves and to chase after them.



https://www.youtube.com/watch?v=zBnZPJJ2QG4

39.     Separated calves display many of these same clinical signs of suffering, including increases in vocalization, stress hormone concentration, weight loss, stress behaviors, and "reuniting behaviors," including forlornly hugging a fence line and standing with heads outside their pens. Earlier weaning also results in less play of all kinds, depriving calves of an important source of emotional enrichment and learning opportunities. Calves who are prematurely separated are also more likely to engage in cross-sucking, or abnormal sucking behavior, and may form an oral fixation with their enclosure that causes them to suck on fixtures or suck on the body of another calf. The latter can cause milk loss in the sucked calf as well as digestive disorders and diarrhea in the sucking calf.

40.     Many of these effects persist for the separated calves. Calves raised without their mothers are more inclined to respond fearfully to unknown objects or to confrontations with unknown cows. One

study found that calves allowed continual access to their mothers in their first 12 weeks of life were more likely to engage in positive activities like exploration, more likely to socialize with other cows, less prone to aggressive postures, and less likely to respond to new situations with stress and fear.[29] Conversely, other studies have demonstrated that adult cows who had suffered early maternal deprivation are less sociable, less able to provide maternal care for their own young, display more behavioral signs of stress, and are less able to cope with new challenges or stimuli.[30]

41.     Early separation may increase susceptibility to serious, even deadly, diseases in both mothers and babies. Stress in cows and calves can be especially high when calves are separated early in life, when the bond between them is strongest and calves are most socially dependent on their mothers.

42.     There is no sufficient welfare or commercial justification for Defendant's practice of premature separation of cow mothers and babies. Many commercial alternatives to separation are available, including systems in which mother cows and their babies have unrestricted access to each other or at least daily contact. Such systems exist, are viable in the U.S., and are common globally, including in countries imposing the types of stronger animal welfare standards Defendant represents they follow to consumers.

43.     Severing of maternal bonds causes separated cows not only emotional distress, but also physiological harm that is costly to both cows and calves. Numerous studies have established that abrupt and premature weaning impairs immune responses in calves, such as by impairing the function of cellular

---

[29] Kathrin Wagner, Daniel Seitner, Kerstin Barth, Rupert Palme, Adreas Futschik, & Susanne Waiblinger, *Effects of Mother Versus Artificial Rearing During the First 12 Weeks of Life on Challenge Responses of Dairy Cows*, 164 Applied Animal Behaviour Sci. 1-11 (2015), https://r.jordan.im/download/mammals/wagner2015.pdf.

[30] *See, e.g.*, Rebecca K. Meagher, Annabelle Beaver, Daniel M. Weary, & Marina A. von Keyserlingk, *Invited review: A Systematic Review of the Effects of Prolonged Cow-Calf Contact on Behavior, Welfare, and Productivity*, 102(7) J. of Dairy Sci. 5765–5783 (May 15, 2019), https://doi.org/10.3168/jds.2018-16021; Marino & Allen, *The Psychology of Cows, supra* note 4; Rolnei R. Daros, Joao H. Costa, Marina J. Hötzel, & Daniel M. Weary, *Separation From the Dam Causes Negative Judgement Bias in Dairy Calves*, 9(5) PloS one e98429 (May 21, 2014), https://doi.org/10.1371/journal.pone.0098429; Tasja Kälber & Kerstin Barth, *Practical Implications of Suckling Systems for Dairy Calves in Organic Production Systems - A Review*, 64(1) Landbauforschung Volkenrode 45-58 (Mar. 2014); Kathrin Wagner, Kerstin Barth, Edna Hillmann, Rupert Palme, Andreas Futschik, & Susanne Waiblinger, *Mother Rearing of Dairy Calves: Reactions to Isolation and to Confrontation with an Unfamiliar Conspecific in a New Environment*, 147 Applied Animal Behaviour Sci. 43-54 (2013).

and other defenses against pathogens necessary to prevent potentially deadly infections.[31] Likewise, there are no protective benefits from premature separation that cannot be achieved through more humane means. Calves reared by their mothers will tend to have higher survival rates.

44.     Further evidence for the commercial viability of alternatives to Defendant's practices, and for the literal falsity of their claims to apply the "highest" animal welfare practices that go "above and beyond" other standards, is supplied by various third-party animal welfare standards for cows used in dairy production. As noted above, a prominent certifier recommends husbandry systems "that allow young calves to remain in the herd with their mothers until weaning occurs naturally," with separation of mother cow and calf to occur only when doing so can "cause as little stress as possible."[32] To qualify for the top two tiers of another certifier's six levels of certification, sellers are required to allow calves to stay with their mothers for at least 168 days, or otherwise make sure calves are fostered for at least 168 days by another nursing cow who is assigned no more than three calves.[33] Despite its promises, Defendant, on information and belief, does not meet these standards.

### *Defendant's Isolation of Calves Inflicts Undue Suffering*

45.     In more natural settings, mother cows introduce their young to other calves to form social groups where they learn how to become well-functioning, healthy adults.

46.     In such settings, calves socialize freely. This includes engaging in, and deriving significant welfare benefits from, vigorous social play—activities such as play-fighting, galloping, bucking, and kicking. Calves begin engaging in these sorts of play behaviors around the second week of life, actively seek companions, and play the most around the age of four months. Calves raised with peers tend to engage in more play.

//

//

---

[31] *See, e.g.*, Kälber & Barth, *Practical Implications of Suckling Systems*, *supra* note 30; Eilish Lynch *et al.*, *Effect of Abrupt Weaning at Housing on Leukocyte Distribution, Functional Activity of Neutrophils, and Acute Phase Protein Response of Beef Calves*, 6 BMC Vet Res 39 (2010), https://doi.org/10.1186/1746-6148-6-39.

[32] Animal Welfare Approved by AGW, *Certified Animal Welfare Approved by AGW Standards for Dairy Cattle*, *supra* note 3.

[33] Global Animal Partnership, *5-Step® Animal Welfare Pilot Standards*, *supra* note 2.

47.     Play is not the only life skill young cows learn from each other. For example, cows allowed to interact with experienced grazers will pick up grazing behaviors more quickly. In addition, calves raised with peers may be able to smell food odors on the breath of their companions, making them more willing to consume new foods.

48.     Cows raised together will form strong, complex, individualized social bonds. If raised in proximity to their peers, cows learn to interact with favored peers with compatible personalities. Cows can differentiate amongst their cow peers in a variety of circumstances and retain information about individual cows for extensive periods of time. In multiple studies, cows have shown skill at discriminating between photographs of familiar and unfamiliar cows.[34] Calves who are raised together will often be seen lying together, as well as engaging in social behaviors including showing affection and grooming each other. Social grooming is very beneficial for cows because it reduces tension and has a calming effect, helps maintain bonds and group cohesion, and can produce a positive emotional response in the recipient. Raising cows together also carries other long-term psychological and physiological benefits. Studies routinely show calves raised with more social interaction eat more, gain more weight, are more likely to eat new foods, are better learners, are less fearful, are less reactive to humans, and retain more ability to cope with change—among various signs of contentment and security.[35] Additionally, calves are highly motivated to seek out full body contact with other calves.

---

[34] Marino & Allen, *The Psychology of Cows*, *supra* note 4 at 478-79.

[35] *See, e.g.*, Joao H. Costa, Marina A. von Keyserlingk, & Daniel M. Weary, *Invited Review: Effects of Group Housing of Dairy Calves on Behavior, Cognition, Performance, and Health*, 99(4) J. of Dairy Sci. 2453–2467 (Feb. 10, 2016), https://doi.org/10.3168/jds.2015-10144; Rebecca K. Meagher, Rolnei R. Daros, Joao H. Costa, Marina A. von Keyserlingk, Maria J. Hötzel, & Daniel M. Weary, *Effects of Degree and Timing of Social Housing on Reversal Learning and Response to Novel Objects in Dairy Calves*, 10(8) PloS one e0132828 (Aug. 14, 2014), https://doi.org/10.1371/journal.pone.0132828; Margit B. Jensen & Lars E. Larsen, *Effects of Level of Social Contact on Dairy Calf Behavior and Health*, 97(8) J. of Dairy Sci. 5035–5044 (Aug. 2014) https://doi.org/10.3168/jds.2013-7311; Joao H. Costa, Rolnei R. Daros, Marina A. von Keyserlingk, & Daniel M. Weary, *Complex Social Housing Reduces Food Neophobia in Dairy Calves*, 97(12) J. of Dairy Sci. 7804–7810 (Oct. 11, 2014), https://doi.org/10.3168/jds.2014-8392; Margit B. Jensen & Daniel M. Weary, *Group Housing and Milk Feeding of Dairy Calves*, 25 WCDS Advances in Dairy Tech. 179-189 (2013), https://wcds.ualberta.ca/wp-content/uploads/sites/57/wp_archive/Archive/2013/Manuscripts/p%20179%20-%20192%20Jensen.pdf; Andreia De Paula Vieira, Anne Marie B. de Passillé, & Daniel M. Weary, *Effects of the Early Social Environment on Behavioral Responses of Dairy Calves to Novel*

---

49.     Defendant, on information and belief, denies calves these demonstrated benefits, raising many calves for dairy production in individual isolation pens. These unfortunate calves are housed in individual hutches—small four-sided pens usually constructed of fiberglass, polyethylene, or wood. Calves are either tethered to hutches or restricted by fencing. While in these hutches, calves are alone, isolated from their mothers and other members of their species, until they reach an age where they will rejoin the herd, be impregnated, and begin to produce milk. The below image shows an interior of an industry-standard hutch:



**Jo-Anne McArthur / We Animals Media**

50.     On information and belief, some farms supplying Defendant rear female calves in small hutches, including those pictured below in photographs available on Google Earth of farms supplying Defendant located in Valley Ford, Petaluma, and Manchester, California:

//

//

//

*Events*, 95(9) J. of Dairy Sci. 5149–5155 (Sep. 1, 2012), https://doi.org/10.3168/jds.2011-5073; Linda R. Duve, Daniel M. Weary, Ulrich Halekoh, & Margit B. Jensen, *The Effects of Social Contact and Milk Allowance on Responses to Handling, Play, and Social Behavior in Young Dairy Calves*, 95(11) J. of Dairy Sci. 6571–6581 (Nov. 2012),  https://doi.org/10.3168/jds.2011-5170.







51.     The suffering isolation causes is immense in both the short and long terms. As with other species, research has shown that isolation results in behavioral and developmental harm to calves. Absent sufficient opportunities for interaction, calves will resort to unsatisfying redirected behaviors such as licking or sucking on fixtures in their pens, as well as on their own fur and skin. Calves reared in isolation also show symptoms of physical, cognitive, sensory, and social deprivation, including both short and long-term difficulties in coping with novel situations and poorer learning abilities compared with group housed and mother-raised calves.

52.     No sufficient welfare or commercial justification exists for Defendant's isolation of calves. Many alternative systems exist and operate in the U.S. and globally, and such systems can be profitable. Social housing improves calves' welfare without compromising calf health, or necessarily increasing expense. For example, all health risks associated with social housing can be mitigated with basic management, while the health benefits and weight gains from social housing are manifest.

53.     Further evidence for the commercial viability of alternatives to Defendant's practices, and that Defendant's claims that it applies the "highest" animal welfare practices that go "above and beyond" other standards are misleading, is supplied by various third-party animal welfare standards for cows used in dairy production. For example, one prominent certifier requires that all weaned calves "must be kept in groups of familiar animals."[36] To qualify for even the lowest of any of the six tiers of another certifier's six levels of certification, sellers are required to allow calves who are not kept with their mothers or with nurse cows to be kept with small groups of other calves, or at least in a same sex pair, and to have visual contact with other calves. This requirement is moot for sellers meeting this certifier's top two tiers of certification, as they are required to keep calves with their mothers or else with nurse cows.[37] Despite its representations to the contrary, Defendant, on information and belief, does not meet these standards.

### Defendant's Deprivation of Adequate Sustenance to Calves Inflicts Undue Suffering

54.     Standard practice in the dairy industry results in feeding individually-reared calves minimal sustenance, far below what they would consume from their mother. Defendant, despite its

---

[36] Animal Welfare Approved by AGW, *Certified Animal Welfare Approved by AGW Standards for Dairy Cattle*, *supra* note 3.
[37] Global Animal Partnership, *5-Step® Animal Welfare Pilot Standards*, *supra* note 2.

advertising, on information and belief, follows similar practices, and therefore, on information and belief, Defendant deprives these calves of adequate milk.

55.     These practices are associated with poor growth and chronic hunger in calves. Early in life, it is difficult for calves to ingest sufficient amounts of feed to meet their nutrient demands when fed artificially. Studies routinely find a large discrepancy between the amount of milk consumed by calves raised in insufficient social environments on dairy farms, and the far larger amount calves will drink when allowed to suckle freely in more natural settings.[38]

56.     Hunger is not the only condition that causes calves deprived of milk to suffer. A contributing factor to the reduction in beneficial play behavior shown by newly separated calves is reduced energy intake. Lack of sufficient nutrients reduces immune health and resilience to lower temperatures, and can itself cause numerous painful and deadly conditions. Conversely, when calves can feed at will, they show fewer abnormal behaviors, higher rumination, increased play behavior, and improved mortality rates.

57.     No sufficient welfare or commercial justification exists for the deprivation inflicted, on information and belief, by Defendant. Rather, as one would expect from the basic facts of cow physiology, cognition, and social structure, this lack of sustenance stems from the needless practices discussed above.

58.     Further evidence for the commercial viability of alternatives to Defendant's practices, and that its claims of applying the "highest" animal welfare practices that go "above and beyond" other standards are misleading, is supplied by various third-party animal welfare standards for cows used in dairy production that, as elaborated above, instruct sellers not to wean calves until an appropriate age. Despite its promises, Defendant, on information and belief, does not meet these standards.

//

---

[38] *See, e.g.*, Costa, von Keyserlingk, & Weary, *Effects of Group Housing of Dairy Calves*, *supra* note 35; Costa, Daros, von Keyserlingk, & Weary, *Complex Social Housing*, *supra* note 35; Jensen & Larsen, *Effects of Level of Social Contact*, *supra* note 35; Jensen & Weary, *Group Housing and Milk Feeding*, *supra* note 35; De Paula Vieira, de Passillé, & Weary, *Effects of the Early Social Environment*, *supra* note 35; Andreia De Paula Vieira, Marina A. von Keyserlingk, & Daniel M. Weary, *Presence of an Older Weaned Companion Influences Feeding Behavior and Improves Performance of Dairy Calves Before and After Weaning From Milk*, 95(6) J. of Dairy Sci. 3218–3224 (Jun. 2012), https://doi.org/10.3168/jds.2011-4821.

*Undue Suffering From Maternal Separation and Isolation Lasts Until Death*

59.     The above descriptions of the long-term effects of early separation of mother cows and their babies, and consequent housing of calves in social isolation, are not the end of these animals' suffering. Within the dairy industry, male calves' eventual destination, following their sale into the meat industry, is typically a commercial slaughterhouse. Likewise, at their new facilities or locations, female calves are either raised as "herd replacement" for the dairy business, or sold to other businesses, so that they can continue this cycle. If they did not previously succumb to conditions caused by their deprivation, females who are no longer at peak commercial value after their milk production levels drop will typically end up at the slaughterhouse too.

60.     The natural lifespan of a cow is 15-20 years. Nevertheless, despite Defendant's advertising, the ultimate fate of male calves born on their farms, after short lives of deprivation, is being trucked by third parties to commercial farms that raise them for meat. Ultimately, on information and belief, all of Defendant's cows who survive long enough to see their milk production levels drop— Defendant is listed by Cornucopia as having a "[m]oderate cull/death rate" that "[w]ill vary widely between farms"[39]—will be sold and suffer premature deaths, or what Defendant refers to as "harvest," at commercial "slaughter plants."[40]  Per an explanation published by Defendant in January 2020—in a difficult to find and navigate question-and-answer section linked at the bottom of Defendant's website— these cows are killed after being "stunned with a captive bolt in the middle of the skull and then the[ir] throat is slit to bleed them out."[41]

## IV.   CLASS ALLEGATIONS

61.     Plaintiff brings this action individually, as well as on behalf of each and all other persons similarly situated, and seeks class certification under California Code of Civil Procedure § 382.

62.     All claims alleged herein arise under California law for which Plaintiff seeks relief authorized by California law.

//

---

[39] The Cornucopia Institute, Grassmilk, *supra* note 27.
[40] *What are Organic Prairie's slaughter practices?*, Organic Valley (Jan. 21, 2020), available at https://organicvalley.force.com/custhelp/s/article/What-are-Organic-Prairies-slaughter-practices.
[41] *Id.*

63.     Pursuant to California Code of Civil Procedure § 382, Plaintiff brings this action on behalf of the following Class:

> California Class: Every person in California who purchased Organic Valley dairy products which Defendant represented were made with any of the following qualities: a "commitment to the highest . . . animal care practices," "humane" practices, "high" or "highest" standards of animal care that "go above and beyond other standards," or cows that are "social." Excluded from the Class are governmental entities, Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns. Also excluded from the Class are any judges, justices or judicial officers presiding over this matter and the members of their immediate families and judicial staff.

64.     **Numerosity:**   The proposed Class is so numerous that individual joinder of all the members is impracticable. Due to the nature of the trade and commerce involved, while Plaintiff does not know the exact number of class members in the Class, she believes them to be in the tens of thousands, if not more. Joinder is also impractical because members of the Class are unlikely to be aware of their rights, and because Class members are unlikely to prosecute such claims on an individual basis since the amounts at stake for many members of the Class may not be sufficient to enable them to maintain separate suits against Defendant. While the exact number and identities of all members of the Class are unknown at this time, such information can be ascertained through appropriate investigation and discovery, such as through Defendant's and/or Defendant's agents' records or by public notice.

65.     **Common Questions of Law and Fact Predominate:** There are many questions of law and fact common to the representative Plaintiff and the Class, and those questions substantially predominate over any questions that may affect individual members of the Class. The common questions of law and fact include, but are not limited to, the following:

> **i.**     Whether Defendant's misleading and deceptive business practice as alleged herein violates sections (a)(2), (a)(3), (a)(5), (a)(7), and (a)(14) of the CLRA;
>
> **ii.**     Whether Defendant's misleading and deceptive business practice as alleged herein is an unlawful, unfair and/or fraudulent business practice under the UCL;
>
> **iii.**     Whether Defendant's misleading and deceptive business practice as alleged herein fraudulently induced Plaintiff and the Class to purchase its dairy products;

iv.   Whether Plaintiff and the Class are entitled to restitution of all money obtained by Defendant through its common and uniform scheme;

v.   Whether Plaintiff and the Class are entitled to prospective injunctive relief enjoining Defendant from continuing to engage in the deceptive, unlawful, and unfair business practices alleged herein;

vi.   Whether Plaintiff and the Class are entitled to declaratory relief holding Defendant's business practices alleged herein are unlawful;

vii.   The nature and extent of damages and other remedies to which the conduct of Defendant entitles members of the putative Class.

66.   These common questions of law and fact predominate over questions that may affect individual class members in that the claims of all members of the Class herein can be established with common proof. Additionally, a class action would be "superior to other available methods for the fair and efficient adjudication of the controversy" because: (1) members of the Class have little interest in individually controlling the prosecution of separate actions given that individual damages claims of each member of the Class are not substantial enough to warrant individual filings; (2) Plaintiff is not aware of other lawsuits against Defendant commenced by or on behalf of members of the Class; and (3) the conduct alleged is common to all members of the Class, and because resolution of the claims of Plaintiff will resolve the claims of the remaining Class, certification does not pose any manageability problems.

67.   **Typicality:** Plaintiff's claims are typical of the claims of the Class, which all arise from the same questions of law and fact involving Defendant's practices. Plaintiff and all members of the Class have been similarly affected by Defendant's conduct as they all purchased and paid premium prices for dairy products Defendant represented in a particular manner on the product packaging, and were deceived.

68.   **Adequacy of Representation:** Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel with substantial experience in handling complex class action litigation. Plaintiff and her counsel are committed to prosecuting this action vigorously on behalf of the Class and have the financial resources to do so.

//

69.     **Superiority of Class Action:** Plaintiff and the members of the Class suffered and will continue to suffer harm as a result of Defendant's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the present controversy. Members of the Class have little interest in individually controlling the prosecution of separate actions because the individual damages Claims of each member of the Class are not substantial enough to warrant individual filings. Because joinder of all members of the Class is impractical, a class action is superior to other available methods for the fair and efficient adjudication of this controversy. A class action will also mitigate the risk of inconsistent or varying adjudications of the issues presented, which, in turn, could establish incompatible standards of conduct for Defendant. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy. In sum, for many, if not most, members of the Class, a class action is the only feasible mechanism that will allow them an opportunity for legal redress and justice.

70.     Adjudication of individual claims of members of the Class with respect to Defendant would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication and could substantially impair or impede the ability of other members of the Class to protect their interests.

71.     Among other relief, Plaintiff and the other Class members seek declaratory and injunctive relief against Defendant to prevent Defendant from committing further violations of California law, including by inflicting economic injury on additional California consumers by inducing them to buy products they would not have purchased absent Defendant's unlawful, fraudulent, and unfair marketing, advertising, packaging, and labelling, and by inducing them to pay excessive premium prices they would not have paid absent Defendant's unlawful, fraudulent, and unfair marketing, advertising, packaging, and labelling.

72.     Defendant has acted on grounds generally applicable to the Class, thereby making appropriate final relief with respect to the Class as a whole.

//

//

# V.   CLAIMS FOR RELIEF

## FIRST CAUSE OF ACTION

### *Violations of Cal. Civ. Code §§ 1750-1785 (the "CLRA")*

### (By Plaintiff and the Class Against Defendant)

73.   Plaintiff, on behalf of herself and other Class members, restates and incorporates by reference each and every allegation contained in paragraphs 1 to 72 as though set forth fully herein.

74.   The Consumers Legal Remedies Act creates a non-exclusive statutory remedy for unfair methods of competition and unfair or deceptive acts or business practices. *See Reveles v. Toyota by the Bay* (1997), 57 Cal.App.4th 1139, 1164. Its self-declared purpose is to protect consumers against these unfair and deceptive business practices, and to provide efficient and economical procedures to secure such protection. Cal. Civ. Code § 1760. The CLRA was designed to be liberally construed and applied in favor of consumers to promote its underlying purposes.

75.   Plaintiff and the other Class members are "consumers," as the term is defined by California Civil Code § 1761(d), because they bought the products at issue for personal, family, or household purposes.

76.   Plaintiff and Defendant, and the other Class members and Defendant, have engaged in "transactions," as that term is defined by California Civil Code §1761(e).

77.   The conduct alleged in this complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods to consumers.

78.   Defendant has violated the CLRA by representing to Plaintiff and the other Class members that it has a "commitment to the highest . . . animal care practices," that it employs "humane" practices, that its "high" or "highest" standards of animal care "go above and beyond other standards," and that its cows are "social," when its business practices are not so, and the cows are actually isolated.

79.   More specifically, Plaintiff alleges that Defendant has violated paragraphs 2, 3, 5, 7, and 9 of California Civil Code § 1770(a) by engaging in the unfair and/or deceptive acts and practices set forth herein. Defendant's unfair and deceptive business practices in misrepresenting the nature of its business were and are intended to, and did result in, numerous individuals, including Plaintiff, being

deceived, in violation of California Civil Code § 1770, *et seq.* Members of the putative Class were damaged in that they paid for products they would not have purchased at all, or would not have paid premium prices for, had they known the truth.

80.     Defendant's violations of the CLRA are ongoing, and Plaintiff and other Class members are seriously threatened, may be irreparably harmed, and denied an effective and complete remedy if, pursuant to California Civil Code § 1780(a)(2) and (a)(5), this Court does not enter injunctive relief that includes, but is not limited to, a requirement that Defendant remove and refrain from making statements in its dairy advertising or on dairy product packaging representing that it has a "commitment to the highest . . . animal care practices," that it employs "humane" practices, that its "high" or "highest" standards of animal care "go above and beyond other standards," and that its cows are "social."

81.     On April 23, 2022, Plaintiff sent a letter to Defendant via certified mail that provided notice of Defendant's CLRA violations and demanded that within thirty (30) days from that date, Defendant correct, repair, replace, or otherwise rectify the unlawful, unfair, false and/or deceptive practices complained of herein. The letter also stated that if Defendant refused to do so, Plaintiff would file a complaint seeking damages and other available relief in accordance with the CLRA's provisions. In response, Defendant did not comply with Plaintiff's demands in the CLRA letter, and to date has not so complied. Plaintiff and other Class members have suffered substantial economic injury by virtue of buying products that they would not have purchased absent Defendant's unlawful conduct, or by virtue of paying an excessive premium price they would not have paid absent Defendant's unlawful conduct.

### SECOND CAUSE OF ACTION

***Violations of Business & Professions Code Section 17200 et seq. (the "UCL")***

**(By Plaintiff and the Class Against Defendant)**

82.     Plaintiff, on behalf of herself and other Class members, restates and incorporates by reference each and every allegation contained in paragraphs 1 to 81 as if fully set forth herein.

83.     California Business & Professions Code § 17200 *et seq.* authorizes private lawsuits to enjoin acts of "unfair competition," which include any unlawful, unfair, or fraudulent business practice.

//

//

84.     The UCL imposes strict liability. Plaintiff need not prove that Defendant intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices—only that such practices occurred.

85.     By committing the acts and practices alleged above, Defendant has violated the UCL, Cal. Bus. & Prof. Code §§ 17200-17210, as to Plaintiff and the Class, by engaging in unlawful, fraudulent, and unfair conduct in violation of the UCL's three independent prongs for liability.

86.     **Unlawful Practices**. Defendant's conduct is in violation of the UCL's proscription against engaging in ***unlawful*** conduct as a result of: numerous violations of the CLRA's provisions, as set forth above, as it violates CLRA §§ 1770(a)(2), (a)(3), (a)(5), (a)(7), and (a)(9). Defendant's conduct also violates Penal Code § 597, which states that "every person who . . . tortures, torments, deprives of necessary sustenance, drink, or shelter, . . . or causes or procures any animal to be so . . . tortured, tormented, deprived of necessary sustenance, drink, shelter . . . ; and whoever, having the charge or custody of any animal, either as owner or otherwise, subjects any animal to needless suffering, or inflicts unnecessary cruelty upon the animal, or in any manner abuses any animal, or fails to provide the animal with proper food, drink, or shelter or protection from the weather" is guilty of a crime. As set forth above, on information and belief, Defendant separates baby cows and their mothers prior to natural weaning and thereby subjects both mother and baby to needless suffering and inflicts unnecessary cruelty upon them, amounting to torture and torment, in violation of Penal Code section 597. On information and belief, Defendant houses calves in isolation and without access to other calves, and thereby subjects them to needless suffering and inflicts unnecessary cruelty upon them, amounting to torture and torment, in violation of Penal Code section 597. On information and belief, Defendant deprives calves of adequate milk and thereby deprives them of necessary sustenance and fails to provide them with proper food and drink, in violation of Penal Code section 597. Defendant's business practices alleged herein, therefore, violate numerous California statutes and are thus unlawful within the meaning of the UCL.

87.     **Unfair Business Practices.** The harm to Plaintiff and members of the public outweighs the utility of Defendant's practices and, consequently, Defendant's practices, as set forth fully above, constitute an unfair business act or practice within the meaning of the UCL.

//

88.     Plaintiff and other Class members have suffered a substantial economic injury by virtue of buying products based on Defendant's misrepresentations. There is no benefit to consumers or competition from Defendant's deceptive conduct. Further, the gravity of harm caused by Defendant's conduct as described above outweighs any justification, motive, or reason for it, particularly considering the viability of legal and humane alternatives. Based on this, Defendant's practices are additionally unfair because they have caused Plaintiff and the Class substantial injury, which is not outweighed by any countervailing benefits to consumers or to competition, and which is not an injury the consumers themselves could have reasonably avoided.

89.     **Fraudulent Business Practices**. Defendant's practices, as set forth above, also violate the UCL's proscription against engaging in *fraudulent* conduct. Defendant's practices are likely to mislead the general public in the future. Consequently, Defendant's practices constitute a fraudulent business practice within the meaning of the UCL.

90.     Pursuant to California Business & Professions Code § 17204, an action for unfair competition may be brought by any "person … who has suffered injury in fact and has lost money or property as a result of such unfair competition." Defendant's misleading business practice directly and seriously injured Plaintiff and the putative Class who were thus deprived of their property rights.

91.     Defendant's violations of the UCL are ongoing, and present an ongoing threat if, pursuant to California Business & Professions Code § 17203, this Court does not enter an order that includes, but is not limited to, requirements that: (1) Defendant remove and refrain from making representations in its dairy advertising or on dairy product packaging stating that it has a "commitment to the highest . . . animal care practices," that it employs "humane" practices," that its "high" or "highest" standards of animal care "go above and beyond other standards," and that its cows are "social"; (2) Defendant be enjoined from depriving calves of adequate milk, housing calves in isolation, and separating baby cows and their mothers prior to natural weaning; (3) Defendant provide restitution to Plaintiff and other Class members; and (4) Defendant disgorge all revenues obtained as a result of violations of the UCL.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff, on behalf of themselves and other Class members, respectfully requests that this Court:

A.   Certify the proposed Class; appoint Plaintiff as representative of the Class; and appoint Plaintiff's undersigned counsel as Class counsel;

B.   Declare that Defendant violates the CLRA, Penal Code section 597, and the UCL by (1) depriving calves of adequate milk, (2) housing calves in isolation, and (3) separating baby cows and their mothers prior to natural weaning.

C.   Declare that Defendant is financially responsible for notifying Class members of the pendency of this suit.

D.   Order Defendant to remove and refrain from making representations in its dairy advertising or on dairy product packaging stating, implying by necessary implication, concealing, or omitting that it has a "commitment to the highest . . . animal care practices," that it employs "humane" practices, that its "high" or "highest" standards of animal care "go above and beyond other standards," and that its cows are "social."

E.   Enjoin Defendant from violating the law by continuing to (1) deprive calves of adequate milk, (2) house calves in isolation, and (3) separate baby cows and their mothers prior to natural weaning.

F.   Award compensatory damages as requested herein, including restitution pursuant to California Business & Professions Code §§ 17203 and 17535 for Plaintiff and other Class members.

G.   Award disgorgement pursuant to California Business & Professions Code §§ 17203 and 17535 for Plaintiff and other Class members.

H.   Award exemplary damages in light of Defendant's fraud, malice and conscious disregard for the rights of Plaintiff and putative Class members.

I.   Award Plaintiff and the other Class members the reasonable costs and expenses of suit, including their attorneys' fees, pursuant to the CLRA and the common law private attorney general doctrine.

J.   Grant Plaintiff and the other Class members such other and further relief as the Court deems just and proper.

Date:    July 19, 2022

Respectfully submitted,

**SCHONBRUN SEPLOW HARRIS**
**HOFFMAN & ZELDES LLP**
HELEN I. ZELDES (SBN 220051)
*hzeldes@sshhzlaw.com*
JOSHUA A. FIELDS (SBN 242938)
*jfields@sshhzlaw.com*
AYA DARDARI (SBN 344039)
*adardari@sshhzlaw.com*
501 W. Broadway, Suite 800
San Diego, CA 92101
Tel: (619) 400-4990

**PETA Foundation**
Asher Smith (*pro hac vice* application pending)
*ashers@petaf.org*
Tala DiBenedetto (*pro hac vice* application pending)
*talad@petaf.org*
2154 West Sunset Boulevard
Los Angeles, CA 90026
Tel:  (323) 210-2263
Fax: (213) 484-1648

*Counsel for Plaintiff Amber Takahashi-Mendoza, an*
*individual, on behalf of herself and all others*
*similarly situated.*

1

## <u>DEMAND FOR JURY TRIAL</u>

2

Plaintiff hereby demand a trial by jury on all claims so triable.

3

4   Date:     July 19, 2022                    Respectfully submitted,

5

6

7   **SCHONBRUN SEPLOW HARRIS**
    **HOFFMAN & ZELDES LLP**

8   HELEN I. ZELDES (SBN 220051)
    *hzeldes@sshhzlaw.com*

9   JOSHUA A. FIELDS (SBN 242938)
    *jfields@sshhzlaw.com*

10  AYA DARDARI (SBN 344039)
    *adardari@sshhzlaw.com*

11  501 W. Broadway, Suite 800
    San Diego, CA 92101

12  Tel: (619) 400-4990

13  **PETA Foundation**
    Asher Smith (*pro hac vice* application pending)

14  *ashers@petaf.org*
    Tala DiBenedetto (*pro hac vice* application pending)

15  *talad@petaf.org*
    2154 West Sunset Boulevard

16  Los Angeles, CA 90026
    Tel:  (323) 210-2263

17  Fax: (213) 484-1648

18  *Counsel for Plaintiff Amber Takahashi-Mendoza, an*
    *individual, on behalf of herself and all others*

19  *similarly situated.*

20

21

22

23

24

25

26

27

28

---

-33-

COMPLAINT                                          Exh. A  Page 44

# EXHIBIT B

**CM-010**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*:<br>Helen I. Zeldes, SBN 220051; Joshua A. Fields, SBN 242938; Aya Dardari, SBN 344039<br>SSHH & Z, LLP., 501 W. Broadway, Ste. 800, San Diego, CA 92101<br>TELEPHONE NO.: (619) 400-4990 FAX NO. *(Optional)*: (310) 399-7040<br>E-MAIL ADDRESS: hzeldes@sshhzlaw.com; jfields@sshhzlaw.com.<br>ATTORNEY FOR *(Name)*: Plaintiff Amber Takahashi-Mendoza. | *FOR COURT USE ONLY*<br><br>**ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of Alameda<br>07/19/2022 at 09:03:30 AM<br>By: Cheryl Clark,<br>Deputy Clerk |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
STREET ADDRESS: 1225 Fallon Street
MAILING ADDRESS: 1225 Fallon Street
CITY AND ZIP CODE: Oakland, CA 94612
BRANCH NAME: René C. Davidson Courthouse

CASE NAME:
Amber Takahashi-Mendoza v. Cooperative Regions of Organic Producer Pools

| **CIVIL CASE COVER SHEET** | | **Complex Case Designation** | CASE NUMBER: |
|---|---|---|---|
| [x] **Unlimited**<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] **Limited**<br>(Amount<br>demanded is<br>$25,000 or less) | [ ] Counter [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | 22CV014564 |
| | | | JUDGE:<br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[x] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [x] is [ ] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [x] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [x] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply)*: a. [x] monetary b. [x] nonmonetary; declaratory or injunctive relief c. [x] punitive
4. Number of causes of action *(specify)*: Two - Violation of California's Consumer Legal Remedies Act and Unfair Competition Law
5. This case [x] is [ ] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: July 19, 2022
Helen I. Zeldes
_____
(TYPE OR PRINT NAME)          ► *(signature)*          (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courts.ca.gov

Exh. B Page 42

**INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET**

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**CASE TYPES AND EXAMPLES**

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

**CIVIL CASE COVER SHEET**

*Unified Rules of the Superior Court of California, County of Alameda*

F. ADDENDUM TO CIVIL CASE COVER SHEET

| Short Title: Takahashi-Mendoza v. Cooperative Regions of Organic Producer Pools | Case Number: |
|---|---|

## CIVIL CASE COVER SHEET ADDENDUM

**THIS FORM IS REQUIRED IN ALL NEW <u>UNLIMITED</u> CIVIL CASE FILINGS IN THE
SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA**

[  ] Oakland, Rene C. Davidson Alameda County Courthouse (446)

[  ] Hayward Hall of Justice (447)

[  ] Pleasanton, Gale-Schenone Hall of Justice (448)

| Civil Case Cover Sheet Category | Civil Case Cover Sheet Case Type | Alameda County Case Type (check only one) | | |
|---|---|---|---|---|
| Auto Tort | Auto tort (22) | [  ] | 34 | Auto tort (G) |
| | | **Is this an uninsured motorist case?  [  ] yes  [  ] no** | | |
| Other PI /PD / WD Tort | Asbestos (04) | [  ] | 75 | Asbestos (D) |
| | Product liability (24) | [  ] | 89 | Product liability (<u>not</u> asbestos or toxic tort/environmental) (G) |
| | Medical malpractice (45) | [  ] | 97 | Medical malpractice (G) |
| | Other PI/PD/WD tort (23) | [  ] | 33 | Other PI/PD/WD tort (G) |
| Non - PI /PD / WD Tort | Bus tort / unfair bus. practice (07) | [X] | 79 | Bus tort / unfair bus. practice (G) |
| | Civil rights (08) | [  ] | 80 | Civil rights (G) |
| | Defamation (13) | [  ] | 84 | Defamation (G) |
| | Fraud (16) | [  ] | 24 | Fraud (G) |
| | Intellectual property (19) | [  ] | 87 | Intellectual property (G) |
| | Professional negligence (25) | [  ] | 59 | Professional negligence - non-medical (G) |
| | Other non-PI/PD/WD tort (35) | [  ] | 03 | Other non-PI/PD/WD tort (G) |
| Employment | Wrongful termination (36) | [  ] | 38 | Wrongful termination (G) |
| | Other employment (15) | [  ] | 85 | Other employment (G) |
| | | [  ] | 53 | Labor comm award confirmation |
| | | [  ] | 54 | Notice of appeal - L.C.A. |
| Contract | Breach contract / Wrnty (06) | | 04 | Breach contract / Wrnty (G) |
| | Collections (09) | [  ] | 81 | Collections (G) |
| | Insurance coverage (18) | [  ] | 86 | Ins. coverage - non-complex (G) |
| | Other contract (37) | [  ] | 98 | Other contract (G) |
| Real Property | Eminent domain / Inv Cdm (14) | [  ] | 18 | Eminent domain / Inv Cdm (G) |
| | Wrongful eviction (33) | [  ] | 17 | Wrongful eviction (G) |
| | Other real property (26) | [  ] | 36 | Other real property (G) |
| Unlawful Detainer | Commercial (31) | [  ] | 94 | Unlawful Detainer - commercial     **Is the deft. in possession** |
| | Residential (32) | [  ] | 47 | Unlawful Detainer - residential     **of the property?** |
| | Drugs (38) | [  ] | 21 | Unlawful detainer - drugs     **[  ] Yes   [  ] No** |
| Judicial Review | Asset forfeiture (05) | [  ] | 41 | Asset forfeiture |
| | Petition re: arbitration award (11) | [  ] | 62 | Pet. re: arbitration award |
| | Writ of Mandate (02) | [  ] | 49 | Writ of mandate |
| | | **Is this a CEQA action (Publ.Res.Code section 21000 et seq)  [  ] Yes  [  ] No** | | |
| | Other judicial review (39) | [  ] | 64 | Other judicial review |
| Provisionally Complex | Antitrust / Trade regulation (03) | [  ] | 77 | Antitrust / Trade regulation |
| | Construction defect (10) | [  ] | 82 | Construction defect |
| | Claims involving mass tort (40) | [  ] | 78 | Claims involving mass tort |
| | Securities litigation (28) | [  ] | 91 | Securities litigation |
| | Toxic tort / Environmental (30) | [  ] | 93 | Toxic tort / Environmental |
| | Ins covrg from cmplx case type (41) | [  ] | 95 | Ins covrg from complex case type |
| Enforcement of Judgment | Enforcement of judgment (20) | [  ] | 19 | Enforcement of judgment |
| | | [  ] | 08 | Confession of judgment |
| Misc Complaint | RICO (27) | [  ] | 90 | RICO (G) |
| | Partnership / Corp. governance (21) | [  ] | 88 | Partnership / Corp. governance (G) |
| | Other complaint (42) | [  ] | 68 | All other complaints (G) |
| Misc. Civil Petition | Other petition (43) | [  ] | 06 | Change of name |
| | | [  ] | 69 | Other petition |

ELECTRONICALLY FILED
Superior Court of California,
County of Alameda
07/19/2022 at 09:03:30 AM
By: Cheryl Clark,
Deputy Clerk

**SCHONBRUN SEPLOW HARRIS**
**HOFFMAN & ZELDES LLP**
HELEN I. ZELDES (SBN 220051)
hzeldes@sshhzlaw.com
JOSHUA A. FIELDS (SBN 242938)
jfields@sshhzlaw.com
AYA DARDARI (SBN 344039)
adardari@sshhzlaw.com
501 W. Broadway, Suite 800
San Diego, CA 92101
Tel:  (619) 400-4990

**PETA Foundation**
ASHER SMITH (*pro hac vice* application pending)
ashers@petaf.org
TALA DIBENEDETTO (*pro hac vice* application pending)
talad@petaf.org
2154 West Sunset Boulevard
Los Angeles, CA 90026
Tel:  (323) 210-2263
Fax:  (213) 484-1648

*Counsel for Plaintiff Amber Takahashi-*
*Mendoza, an individual, on behalf of herself*
*and all others similarly situated.*

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**COUNTY OF ALAMEDA**

| | |
|---|---|
| AMBER TAKAHASHI-MENDOZA, an individual, on behalf of herself and all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>Cooperative Regions of Organic Producer Pools d/b/a Organic Valley, a Wisconsin Corporation, and DOES 1-10, inclusive.<br><br>*Defendants*. | Case No.  22CV014564<br><br>**CLASS ACTION**<br><br>**DECLARATION OF PROPER VENUE BY AMBER TAKAHASHI-MENDOZA** |

## **DECLARATION OF PROPER VENUE BY AMBER TAKAHASHI-MENDOZA**

I, Amber Takahashi-Mendoza, declare as follows:

1.       I am a Plaintiff in this action, and I am a resident and citizen of the State of California. I have personal knowledge of the facts alleged herein, and, if called as a witness, I could and would testify competently thereto.

2.       The Complaint in this action, filed concurrently with this Declaration, is filed in the proper place for trial under Civil Code § 1780(d) in that Alameda County is a county where Defendant does business.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this Declaration was executed in Oroville, California on July 15 2022.

_____
Amber Takahashi-Mendoza

<table>
<tr><td colspan="2">

# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF ALAMEDA

</td><td>

Reserved for Clerk's File Stamp

**FILED**
Superior Court of California
County of Alameda

07/19/2022

Clad Fligg, Executive Officer /Clerk of the Court
By: *Cheryl Clark* Deputy
C. Clark

</td></tr>
</table>

| | |
|---|---|
| COURTHOUSE ADDRESS:<br>Rene C. Davidson Courthouse<br>Administration Building, 1221 Oak Street, Oakland, CA 94612 | |
| PLAINTIFF:<br>Amber Takahashi-Mendoza | |
| DEFENDANT:<br>Cooperative Regions of Organic Producer Pools | |
| **NOTICE OF CASE MANAGEMENT CONFERENCE** | CASE NUMBER:<br>22CV014564 |

TO THE PLAINTIFF(S)/ATTORNY(S) FOR PLAINTIFF(S) OF RECORD:

You are ordered to serve all named defendants and file proofs of service on those defendants with the court within 60 days of the filing of the complaint (Cal. Rules of Court, 3.110(b)).

Give notice of this conference to all other parties and file proof of service.

Your Case Management Conference has been scheduled on:

| | |
|---|---|
| Date: 11/16/2022     Time: 8:30 AM     Dept.: 23 | |
| Location:  Rene C. Davidson Courthouse<br>Administration Building, 1221 Oak Street, Oakland, CA 94612 | |

TO  DEFENDANT(S)/ATTORNEY(S)  FOR  DEFENDANT(S)  OF  RECORD:

The setting of the Case Management Conference does not exempt the defendant from filing a responsive pleading as required by law, you must respond as stated on the summons.

TO ALL PARTIES who have appeared before the date of the conference must:

Pursuant to California Rules of Court, 3.725, a completed Case Management Statement (Judicial Council form CM-110) must be filed and served at least 15 calendar days before the Case Management Conference. The Case Management Statement may be filed jointly by all parties/attorneys of record or individually by each party/attorney of record.

**Meet and confer**, in person or by telephone as required by Cal. Rules of Court, rule 3.724.

**Post jury fees** as required by Code of Civil Procedure section 631.

If you do not follow the orders above, the court may issue an order to show cause why you should not be sanctioned under Cal. Rules of Court, rule 2.30. Sanctions may include monetary sanctions, striking pleadings or dismissal of the action.

The judge may place a Tentative Case Management Order in your case's on-line register of actions before the conference. This order may establish a discovery schedule, set a trial date or refer the case to Alternate Dispute Resolution, such as mediation or arbitration. Check the court's eCourt Public Portal for each assigned department's procedures regarding tentative case management orders at https://eportal.alameda.courts.ca.gov.

# NOTICE OF
# CASE MANAGEMENT CONFERENCE

Exh. B  Page 50

| **SUPERIOR COURT OF CALIFORNIA**<br>**COUNTY OF ALAMEDA** | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Rene C. Davidson Courthouse<br>1225 Fallon Street, Oakland, CA 94612 | **FILED**<br>Superior Court of California<br>County of Alameda<br><br>07/19/2022<br><br>Chad Finke, Executive Officer / Clerk of the Court<br>By: _Cheryl Clark_ Deputy<br>C. Clark |
| PLAINTIFF/PETITIONER:<br>Amber Takahashi-Mendoza | |
| DEFENDANT/RESPONDENT:<br>Cooperative Regions of Organic Producer Pools | |
| **CERTIFICATE OF MAILING** | CASE NUMBER:<br>22CV014564 |

**I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Notice of Case Management Conference upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail at the courthouse in Oakland, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.**

Helen I. Zeldes
Schonbrun Seplow Harris Hoffman & Zeldes, LLP
501 W. Broadway, Ste. 800
San Diego, CA 92101

Chad Finke, Executive Officer / Clerk of the Court

Dated: 07/19/2022                   By:

_Cheryl Clark_

C. Clark, Deputy Clerk

**CERTIFICATE OF MAILING**

1

**FAEGRE DRINKER BIDDLE & REATH LLP**
RITA MANSURYAN (SBN 323034)

2

*rita.mansuryan@faegredrinker.com*
1800 Century Park East, Suite 1500

3

Los Angeles, CA  90067
Telephone:     (310) 203-4000

4

Fax:             (310) 229-1285

5

Attorneys for Defendant
COOPERATIVE REGIONS OF ORGANIC

6

PRODUCER POOLS d/b/a ORGANIC VALLEY

**ELECTRONICALLY FILED**
Superior Court of California,
County of Alameda
08/12/2022 at 04:21:44 PM
By: Xian-xii Bowie,
Deputy Clerk

7

8

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

9

### COUNTY OF ALAMEDA

10

11

Amber Takahashi-Mendoza, an individual, on
behalf of herself and all others similarly

12

situated,

13

                    Plaintiff,

14

          v.

15

Cooperative Regions of Organic Producer
Pools d/b/a Organic Valley, a Wisconsin

16

Corporation.

17

                    Defendant.

Case No.  22CV014564

**NOTICE OF APPEARANCE OF RITA
MANSURYAN FOR DEFENDANT
COOPERATIVE REGIONS OF
ORGANIC PRODUCER POOLS d/b/a
ORGANIC VALLEY**

Complaint Filed:     July 19, 2022

18

19

20

21

22

23

24

25

26

27

28

US.351740522.01

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

NOTICE OF APPEARANCE OF RITA MANSURYAN FOR DEFENDANT COOPERATIVE
REGIONS OF ORGANIC PRODUCER POOLS D/B/A ORGANIC VALLEY

1

**TO THE COURT, THE PARTIES AND THEIR ATTORNEYS OF RECORD:**

2

    **PLEASE TAKE NOTICE** that Rita Mansuryan of Faegre Drinker Biddle & Reath

3

LLP hereby appear as counsel of record and submits payment for first appearance for Defendant

4

COOPERATIVE REGIONS OF ORGANIC PRODUCER POOLS d/b/a ORGANIC VALLEY

5

("Defendant").  It is respectfully requested that she be added to the service list in this action as

6

follows:

7

Rita Mansuryan

8

FAEGRE DRINKER BIDDLE & REATH LLP

9

1800 Century Park East, Suite 1500

10

Los Angeles, California  90067

11

Telephone:   +1 310 500 2090

12

Facsimile:   +1 310 500 2091

13

Email: *rita.mansuryan@faegredrinker.com*

14

    Rita Mansuryan is licensed to practice law in the State of California and is a member in

15

good standing with the California State Bar.

16

17

Dated:  August 12, 2022           **FAEGRE DRINKER BIDDLE & REATH LLP**

18

19

              By:   _Rita Mansuryan_

20

                RITA MANSURYAN

21

                Attorneys for Defendant

22

                COOPERATIVE REGIONS OF ORGANIC
PRODUCER POOLS d/b/a ORGANIC

23

                VALLEY

24

25

26

27

28

US.351740522.01

---

**NOTICE OF APPEARANCE OF RITA MANSURYAN FOR DEFENDANT COOPERATIVE
REGIONS OF ORGANIC PRODUCER POOLS D/B/A ORGANIC VALLEY**

1

## **PROOF OF SERVICE**

2

I, declare I am a citizen of the United States and employed by Faegre Drinker Biddle &
Reath LLP.  I am over the age of eighteen years and not a party to the within-entitled action.  My
business address is 1800 Century Park East, Suite 1500, Los Angeles, California  90067.  On
August 12, 2022, I served a copy of the within document(s):

3

4

**NOTICE OF APPEARANCE OF RITA MANSURYAN FOR DEFENDANT
COOPERATIVE REGIONS OF ORGANIC PRODUCER POOLS d/b/a ORGANIC
VALLEY**

5

6

7

☒    by transmitting via e-mail or electronic transmission the document(s) listed above
to the person(s) at the e-mail address(es) set forth below.

8

9

**SCHONBRUN SEPLOW HARRIS**                    Counsel for Plaintiff
**HOFFMAN & ZELDES LLP**                        AMBER TAKAHASHI-MENDOZA
HELEN I. ZELDES
*hzeldes@sshhzlaw.com*
JOSHUA A. FIELDS
*jfields@sshhzlaw.com*
AYA DARDARI
*adardari@sshhzlaw.com*
501 W. Broadway, Suite 800
San Diego, CA 92101
Tel: (619) 400-4990

10

11

12

13

14

15

**PETA Foundation**                             Counsel for Plaintiff
ASHER SMITH                                     AMBER TAKAHASHI-MENDOZA
*ashers@petaf.org*
TALA DIBENEDETTO
*talad@petaf.org*
2154 West Sunset Boulevard
Los Angeles, CA 90026
Tel: (323) 210-2263
Fax: (213) 484-1648

16

17

18

19

20

21

I declare under penalty of perjury under the laws of the State of California that the
above is true and correct.

22

Executed on August 12, 2022, at Los Angeles, California.

23

24

25

_____
           Caridad F. Featos-Williams

26

27

28

Faegre Drinker Biddle &
Reath LLP
Attorneys at Law
Los Angeles

US.351740522.01

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA**
**Branch Name:** Rene C. Davidson Alameda County Courthouse
**Mailing Address:** 1225 Fallon Street
**City, State and Zip Code:** Oakland CA 94612

| | |
|---|---|
| **SHORT TITLE:** TAKAHASHI-MENDOZA vs COOPERATIVE REGIONS OF ORGANIC PRODUCER POOLS | **CASE NUMBER:** 22CV014564 |
| **NOTICE OF CONFIRMATION OF ELECTRONIC FILING** | |

The Electronic Filing described by the below summary data was reviewed and accepted by the Superior Court of California, County of ALAMEDA. In order to process the filing, the fee shown was assessed.

**Electronic Filing Summary Data**

Electronically Submitted By:  One Legal ALA
Reference Number: 18731271
Submission Number: 22AA00101965
Court Received Date: 08/12/2022
Court Received Time: 4:21 pm
Case Number: 22CV014564
Case Title: TAKAHASHI-MENDOZA vs COOPERATIVE REGIONS OF ORGANIC PRODUCER POOLS
Location: Rene C. Davidson Alameda County Courthouse
Case Type: Civil Unlimited
Case Category: Other Commercial/Business Tort (not fraud/ breach of contract)
Jurisdictional Amount: Over $25,000
Notice Generated Date: 08/15/2022
Notice Generated Time: 9:38 am

| **Documents Electronically Filed/Received** | **Status** |
|---|---|
| Notice of Appearance | Accepted |

**Comments**
Submitter's Comments: This case has not been designated complex. The hearing to determine whether or not the case is deemed complex is schedule for August 19. We should not pay complex fees at this time.  Thank you.

Clerk's Comments:

**Electronic Filing Service Provider Information**
Service Provider: One Legal ALA
Contact: One Legal
Phone:

---

**NOTICE OF CONFIRMATION OF FILING**

Superior Court of California
County of Alameda

,

**Receipt**          EFM-2022-0113296.1

**Date:**          8/15/22 9:38 AM
**Time:**          8/15/22 9:38 AM

CASE # 22CV014564
TAKAHASHI-MENDOZA vs COOPERATIVE

| | |
|---|---:|
| Civil Unlimited - Answer or other first paper filed by each party other than plaintiff, amount over $25K (including UD) | 435.00 |
| Civil - Additional fee for case designated as complex (for each defendant, up to $18K/case) | 1,000.00 |
| eCourt Transaction Fee (eFiling) | 5.00 |
| **Case Total:** | 1,440.00 |
| **Total Paid:** | 1,440.00 |

22AA00101965

ONE LEGAL

# Credit Card Sale

1400 N. McDowell Blvd
Suite 300
Petaluma CA 94954
TIN : 85-4343705

| Date | 8/15/2022 |
|---|---|
| **Customer** | 0093966 |
| **Credit Sale** | 04291197 |
| **Amount Due** | $0 |

| **Bill To** |
|---|
| Faegre Drinker Biddle & Reath LLP
1800 Century Park East
Suite 1500
Los Angeles CA 90067 |

| Order Number | 18731271 |
|---|---|
| Contact | Caridad Frutos-Williams |
| Attorney | Rita Mansuryan |
| Billing Code | 518170.000009 |
| Case Title | TAKAHASHI-MENDOZA vs COOPERATIVE REGIONS OF ORGANIC PRODUCER POOLS |
| Court | Superior Court of California, Alameda County |
| Court Transaction Number | 22AA00101965 |
| Case Number | 22CV014564 |
| Documents | Notice of Appearance |

| STATUTORY DISBURSEMENTS* | AMOUNT |
|---|---|
| Court Technology Access Fee | $6.95 |
| Court Filing Fee | $1,435.00 |
| **SUBTOTAL** | **$1,441.95** |

| ONE LEGAL FEES | AMOUNT |
|---|---|
| eFiling Charge | $12.50 |
| Convenience Fee‡ | $42.91 |
| **SUBTOTAL** | **$55.41** |

| FEES SUMMARY | AMOUNT |
|---|---|
| Disbursements | $1,441.95 |
| One Legal Fees | $55.41 |
| **TOTAL CHARGED** | **$1,497.36** |

\* These mandatory fees are charged by the court or required by statute and are not One Legal service fees. One Legal disburses these fees on your behalf.
‡ When paying invoices by credit card, a convenience fee will be assessed in accordance with applicable law and Terms of Service accepted at time of order. To avoid these fees, you can choose to pay via ACH.

**ELECTRONICALLY FILED**
Superior Court of California,
County of Alameda
**08/15/2022 at 06:04:20 PM**
By: Andrei Gospel,
Deputy Clerk

1   **FAEGRE DRINKER BIDDLE & REATH LLP**
    RITA MANSURYAN (SBN 323034)
2   *rita.mansuryan@faegredrinker.com*
    1800 Century Park East, Suite 1500
3   Los Angeles, CA  90067
    Telephone:     (310) 203-4000
4   Fax:           (310) 229-1285

5   Attorneys for Defendant
    COOPERATIVE REGIONS OF ORGANIC
6   PRODUCER POOLS d/b/a ORGANIC VALLEY, A
    WISCONSIN CORPORATION

7

8              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                        **COUNTY OF ALAMEDA**

10

11   Amber Takahashi-Mendoza, an individual, on      Case No.  22CV014564
     behalf of herself and all others similarly
12   situated,                                        Hon. Brad Seligman

13                 Plaintiff,                         **NOTICE OF INTENT TO APPEAR
                                                      REMOTELY AT COMPLEX
14          v.                                        DETERMINATION HEARING**

15   Cooperative Regions of Organic Producer          **Hearing**:
     Pools d/b/a Organic Valley, a Wisconsin
16   Corporation.                                     Date:      August 19, 2022
                                                      Time:      9:30 a.m.
17                 Defendant.                         Dept:      23

18

19                                                    Complaint Filed:    July 19, 2022

20

21

22

23

24

25

26

27

28

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

US.351825944.01

**NOTICE OF INTENT TO APPEAR REMOTELY AT COMPLEX DETERMINATION HEARING**

1         Please take notice that counsel for Defendant Cooperative Regions Of Organic Producer

2    Pools d/b/a Organic Valley intends to appear remotely at the August 19, 2022, Complex

3    Determination hearing.  *See* Code of Civil Procedure § 367.75.  Counsel intends to appear by

4    videoconference, and agrees to keep the proceeding confidential to the same extent as would be

5    required if appearing in person.

6

7    Dated:  August 15, 2022                 **FAEGRE DRINKER BIDDLE & REATH LLP**

8

9

10                          By: _____

11                             RITA MANSURYAN

12                             Attorneys for Defendant

13                             COOPERATIVE REGIONS OF ORGANIC
                               PRODUCER POOLS d/b/a ORGANIC

14                             VALLEY, A WISCONSIN CORPORATION

15

16

17

18

19

20

21

22

23

24

25

26

27

28

US.351825944.01

**NOTICE OF INTENT TO APPEAR REMOTELY AT COMPLEX DETERMINATION HEARING**

## **PROOF OF SERVICE**

I declare I am a citizen of the United States and employed by Faegre Drinker Biddle & Reath LLP.  I am over the age of eighteen years and not a party to the within-entitled action.  My business address is 1800 Century Park East, Suite 1500, Los Angeles, California  90067.  On August 15, 2022, I served a copy of the within document(s):

**NOTICE OF INTENT TO APPEAR REMOTELY AT COMPLEX DETERMINATION HEARING**

☒  by transmitting via e-mail or electronic transmission the document(s) listed above to the person(s) at the e-mail address(es) set forth below.

**SCHONBRUN SEPLOW HARRIS**          Counsel for Plaintiff
**HOFFMAN & ZELDES LLP**                     AMBER TAKAHASHI-MENDOZA
HELEN I. ZELDES
*hzeldes@sshhzlaw.com*
JOSHUA A. FIELDS
*jfields@sshhzlaw.com*
AYA DARDARI
*adardari@sshhzlaw.com*
501 W. Broadway, Suite 800
San Diego, CA 92101
Tel: (619) 400-4990

**PETA Foundation**                                     Counsel for Plaintiff
ASHER SMITH                                              AMBER TAKAHASHI-MENDOZA
*ashers@petaf.org*
TALA DIBENEDETTO
*talad@petaf.org*
2154 West Sunset Boulevard
Los Angeles, CA 90026
Tel: (323) 210-2263
Fax: (213) 484-1648

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on August 15, 2022, at Los Angeles, California.

_____
Caridad F. Frutos-Williams

US.351825944.01

**PROOF OF SERVICE**

| | |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA**<br>**Branch Name:** Rene C. Davidson Alameda County Courthouse<br>**Mailing Address:** 1225 Fallon Street<br>**City, State and Zip Code:** Oakland CA 94612 | |
| **SHORT TITLE:** TAKAHASHI-MENDOZA vs COOPERATIVE REGIONS OF ORGANIC PRODUCER POOLS | **CASE NUMBER:**<br>22CV014564 |
| **NOTICE OF CONFIRMATION OF ELECTRONIC FILING** | |

The Electronic Filing described by the below summary data was reviewed and accepted by the Superior Court of California, County of ALAMEDA. In order to process the filing, the fee shown was assessed.

**Electronic Filing Summary Data**

Electronically Submitted By:  One Legal ALA
Reference Number: 18740551
Submission Number: 22AA00102644
Court Received Date: 08/15/2022
Court Received Time: 6:04 pm
Case Number: 22CV014564
Case Title: TAKAHASHI-MENDOZA vs COOPERATIVE REGIONS OF ORGANIC PRODUCER POOLS
Location: Rene C. Davidson Alameda County Courthouse
Case Type: Civil Unlimited
Case Category: Other Commercial/Business Tort (not fraud/ breach of contract)
Jurisdictional Amount: Over $25,000
Notice Generated Date: 08/16/2022
Notice Generated Time: 9:23 am

| **Documents Electronically Filed/Received** | **Status** |
|---|---|
| Notice (name extension) | Accepted |

**Comments**
Submitter's Comments:

Clerk's Comments:

**Electronic Filing Service Provider Information**
Service Provider: One Legal ALA
Contact: One Legal
Phone:

---

**NOTICE OF CONFIRMATION OF FILING**

Superior Court of California
County of Alameda

,

**Receipt**      EFM-2022-0113777.1

**Date:**       8/16/22 9:23 AM
**Time:**       8/16/22 9:23 AM

CASE # 22CV014564
TAKAHASHI-MENDOZA vs COOPERATIVE

eCourt Transaction Fee                              5.00
(eFiling)
                          **Case Total:**          5.00

                          **Total Paid:**          5.00

22AA00102644

# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF ALAMEDA

Reserved for Clerk's File Stamp

COURTHOUSE ADDRESS:

Rene C. Davidson Courthouse

Administration Building, 1221 Oak Street, Oakland, CA 94612

PLAINTIFF(S):

Amber Takahashi-Mendoza

Cooperative Regions of Organic Producer Pools

**FILED**
Superior Court of California
County of Alameda

08/19/2022

Clad Flike, Executive Officer / Clerk of the Court

By: _____ Deputy
J. Castaneda

## NOTICE OF CASE REASSIGNMENT

CASE NUMBER:

22CV014564

**EFFECTIVE**   08/19/2022

## THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Pursuant to Rule 3.734 of the California Rules of Court and Title 3 Chapter 2 of the Local Rules of the Superior Court of California, County of Alameda, this action is hereby assigned by the Presiding Judge for all purposes to:

| | |
|---|---|
| ASSIGNED JUDGE: | Brad Seligman |
| DEPARTMENT: | 23 |
| LOCATION: | Rene C. Davidson Courthouse |
| | Administration Building, 1221 Oak Street, Oakland, CA 94612 |
| PHONE NUMBER: | (510) 267-6939 |
| FAX NUMBER: | |
| EMAIL ADDRESS: | Dept23@alameda.courts.ca.gov |

Under direct calendaring, this case is assigned to a single judge for all purposes including trial.

Please note: In this case, any challenge pursuant to Code of Civil Procedures section 170.6 must be exercised within the time period by law. (See Code of Civ. Proc. §§ 170.6, subd. (a.)(2) and 101.3)

NOTICE OF NONAVAILABILITY OF COURT REPORTERS: Effective June 4, 2012, the court will not provide a court reporter for civil law and motion hearings, any other hearing or trial in civil departments, or any afternoon hearing in Department 201 (probate). Parties may arrange and pay for the attendance of a certified shorthand reporter. In limited jurisdiction cases, parties may request electronic recording. Amended Local Rule 3.95 states: "Except as otherwise required by law, in general civil case and probate departments, the services of an official court reporter are not normally available. For civil trials, each party must serve and file a statement before the trial date indicating whether the party requests the presence of an official court reporter."

GENERAL PROCEDURES

Following assignment of a civil case to a specific department, all pleadings, papers, forms, documents and writings can be submitted for filing at either Civil Clerk's Office, located at the Rene C. Davidson Courthouse, Room 109, 1225 Fallon Street, Oakland, California, 94612, and the Hayward Hall of Justice, 24405 Amador Street, Hayward, California, 94544 and through Civil e-filing. Information regarding Civil e-filing can be found on the courts website. All documents, with the exception of the original summons and the original civil complaint, shall have clearly typed on the face page of each document, under the case number, the following:

## NOTICE OF CASE REASSIGNMENT

Exh. B  Page 63

**ASSIGNED FOR ALL PURPOSES TO**

JUDGE Brad Seligman

DEPARTMENT 23

All parties are expected to know and comply with the Local Rules of this Court, which are available on the court's website at http://www.alameda.courts.ca.gov/Pages.aspx/Local-Rules(1) and with the California Rules of Court, which are available at www.courtinfo.ca.gov.

Parties must meet and confer to discuss the effective use of mediation or other alternative dispute processed (ADR) prior to the Initial Case Management Conference. The court encourages parties to file a "Stipulation to Attend ADR and Delay Initial Case Management Conference for 90 Days." The court's website contains this form and other ADR information. If the parties do not stipulate to attend ADR, the parties must be prepared to discuss referral to ADR at the Initial Case Management Conference.

COURT RESERVATIONS

The use of the Court Reservation System (CRS) is now mandated in many civil courtrooms within the Alameda County Superior Court. Instead of calling or emailing the courtroom to make a reservation, parties with a case assigned to a courtroom using CRS are directed to utilize CRS to make and manage their own reservations, within parameters set by the courtrooms. CRS is available 24 hours a day, seven days a week and reservations can be made from a computer or smart phone. Please note, you are prohibited from reserving more than one hearing date for the same motion.

Prior to scheduling any motion on CRS, including any Applications for Orders for Appearance and Examination, or continuing any motion, please review the online information (if any) for the courtroom in which you are reserving. There may be specific and important conditions associated with certain motions and proceedings. Information is available on the court's eCourt Public Portal at www.eportal.alameda.courts.ca.gov.

Chad Finke, Executive Officer / Clerk of the Court

By

J. Castaneda, Deputy Clerk

**NOTICE OF CASE REASSIGNMENT**

| SUPERIOR COURT OF CALIFORNIA COUNTY OF ALAMEDA | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Rene C. Davidson Courthouse<br>1225 Fallon Street, Oakland, CA 94612 | **FILED**<br>Superior Court of California<br>County of Alameda<br>08/19/2022<br>Chad Finke, Executive Officer/Clerk of the Court<br>By: _____ Deputy<br>J. Castaneda |
| PLAINTIFF/PETITIONER:<br>Amber Takahashi-Mendoza | |
| DEFENDANT/RESPONDENT:<br>Cooperative Regions of Organic Producer Pools | |
| **CERTIFICATE OF MAILING** | CASE NUMBER:<br>22CV014564 |

I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Notice of Case Reassignment upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail at the courthouse in Oakland, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.

Helen I. Zeldes
Schonbrun Seplow Harris Hoffman & Zeldes, LLP
501 W. Broadway, Ste. 800
San Diego, CA 92101

Rita Mansuryan
Faegre Drinker Biddle & Reath LLP
1800 Century Park East, Suite 1500
Los Angeles, CA 90067

Chad Finke, Executive Officer / Clerk of the Court

Dated: 08/19/2022

By:

J. Castaneda, Deputy Clerk

**CERTIFICATE OF MAILING**

Exh. B  Page 65

# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF ALAMEDA

Reserved for Clerk's File Stamp

**FILED**
Superior Court of California
County of Alameda

08/19/2022

Chad Finke, Executive Officer / Clerk of the Court

By: _X̶u̶l̶a̶ ̶—̶f̶r̶l̶_ Deputy
J. Castaneda

COURTHOUSE ADDRESS:

Rene C. Davidson Courthouse
1225 Fallon Street, Oakland, CA 94612

PLAINTIFF:
Amber Takahashi-Mendoza

DEFENDANT:
Cooperative Regions of Organic Producer Pools

## NOTICE OF CASE RESCHEDULING OR RELOCATION

CASE NUMBER:
22CV014564

TO THE PARTIES:
You are hereby notified that the above-entitled matter, previously set for

Initial Case Management Conference                          as follows:

Rene C. Davidson Courthouse          on 11/16/2022    at 8:30 AM  in Department 23

has been rescheduled, or relocated, as follows:

Rene C. Davidson Courthouse          on 11/22/2022    at 3:00 PM  in Department 23

Chad Finke, Executive Officer / Clerk of the Court

Dated: 08/19/2022                    By J. Castaneda

Deputy Clerk

## NOTICE OF CASE RESCHEDULING OR RELOCATION

Exh. B  Page 66

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF ALAMEDA | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Rene C. Davidson Courthouse<br>1225 Fallon Street, Oakland, CA 94612 | **FILED**<br>Superior Court of California<br>County of Alameda<br>08/19/2022<br>Chad Finke, Executive Officer/Clerk of the Court<br>By: _____ Deputy<br>J. Castaneda |
| PLAINTIFF/PETITIONER:<br>Amber Takahashi-Mendoza | |
| DEFENDANT/RESPONDENT:<br>Cooperative Regions of Organic Producer Pools | |
| **CERTIFICATE OF MAILING** | CASE NUMBER:<br>22CV014564 |

I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Notice of Case Rescheduling or Relocation upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail at the courthouse in Oakland, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.

Helen I. Zeldes
Schonbrun Seplow Harris Hoffman & Zeldes, LLP
501 W. Broadway, Ste. 800
San Diego, CA 92101

Rita Mansuryan
Faegre Drinker Biddle & Reath LLP
1800 Century Park East, Suite 1500
Los Angeles, CA 90067

Chad Finke, Executive Officer / Clerk of the Court

Dated: 08/19/2022

By:

J. Castaneda, Deputy Clerk

**CERTIFICATE OF MAILING**

Exh. B  Page 67

# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF ALAMEDA

**22CV014564: TAKAHASHI-MENDOZA vs COOPERATIVE REGIONS OF ORGANIC PRODUCER POOLS**
**08/19/2022 Complex Determination Hearing in Department 23**

Tentative Ruling

COMPLEX DETERMINATION

The Court designates this case as complex pursuant to Rule 3.400 et seq. of the California Rules of Court. Counsel are advised to be familiar with the Alameda County Local Rules concerning complex litigation, including Rule 3.250 et seq. An order assigning the case to a judge and an initial case management order will be issued.

COMPLEX CASE FEES

Pursuant to Government Code section 70616, any non-exempt party who has appeared in the action but has not paid the complex case fee is required to pay the fee within ten days of the filing of this order. The complex case fee is $1,000 for each plaintiff or group of plaintiffs appearing together and $1,000 PER PARTY for each defendant, intervenor, respondent or other adverse party, whether filing separately or jointly, up to a maximum of $18,000 for all adverse parties. All payments must identify on whose behalf the fee is submitted. Please submit payment to the attention of the Complex Litigation Clerk located in the Civil Division at the Rene C. Davidson Courthouse, 1225 Fallon Street, Oakland, CA 94612. Please make check(s) payable to the Clerk of the Superior Court. Documents may continue to be filed as allowed under Local Rule 1.9. Note that for those admitted pro hac vice, there is also an annual fee. (Gov't Code section 70617.)

PROCEDURES

Calendar information, filings, and tentative rulings are available to the public at https://eportal.alameda.courts.ca.gov/. All counsel are expected to be familiar and to comply with pertinent provisions of the Code of Civil Procedure, the California Rules of Court, the Alameda County Superior Court Local Rules and the procedures outlined on the domain web page of the assigned department.

SERVICE OF THIS ORDER

Counsel for plaintiff(s) shall have a continuing obligation to serve a copy of this order on newly joined parties defendant not listed on the proof of service of this order and file proof of service. Each party defendant joining any third party cross-defendant shall have a continuing duty to serve a copy of this order on newly joined cross-defendants and to file proof of service.

1

**FAEGRE DRINKER BIDDLE & REATH LLP**
RITA MANSURYAN (SBN 323034)

2

*rita.mansuryan@faegredrinker.com*
DAVID A. BELCHER (SBN 330166)

3

*david.belcher@faegredrinker.com*
1800 Century Park East, Suite 1500

4

Los Angeles, CA  90067
Telephone:     (310) 203-4000

5

Fax:             (310) 229-1285

6

Attorneys for Defendant
COOPERATIVE REGIONS OF ORGANIC

7

PRODUCER POOLS d/b/a ORGANIC VALLEY

8

9

### SUPERIOR COURT OF THE STATE OF CALIFORNIA

### COUNTY OF ALAMEDA

10

11

| | |
|---|---|
| Amber Takahashi-Mendoza, an individual, on behalf of herself and all others similarly situated, | Case No.  22CV014564 |

12

13

14

15

16

17

| | |
|---|---|
| Plaintiff, | |
| v. | **NOTICE OF APPEARANCE OF DAVID A. BELCHER FOR DEFENDANT COOPERATIVE REGIONS OF ORGANIC PRODUCER POOLS d/b/a ORGANIC VALLEY** |
| Cooperative Regions of Organic Producer Pools d/b/a Organic Valley, a Wisconsin Corporation. | |
| Defendant. | Complaint Filed:     July 19, 2022 |

18

19

20

21

22

23

24

25

26

27

28

FAEGRE DRINKER BIDDLE &
REATH LLP
ATTORNEYS AT LAW
LOS ANGELES

US.352258650.01

**NOTICE OF APPEARANCE OF DAVID A. BELCHER FOR DEFENDANT COOPERATIVE REGIONS OF ORGANIC PRODUCER POOLS D/B/A ORGANIC VALLEY**

1         **TO THE COURT, THE PARTIES AND THEIR ATTORNEYS OF RECORD:**

2         **PLEASE TAKE NOTICE** that David A. Belcher of Faegre Drinker Biddle & Reath

3  LLP hereby appears as counsel of record for Defendant COOPERATIVE REGIONS OF

4  ORGANIC PRODUCER POOLS d/b/a ORGANIC VALLEY ("Defendant").  It is respectfully

5  requested that he be added to the service list in this action as follows:

6
7
8
9
10

David A. Belcher
FAEGRE DRINKER BIDDLE & REATH LLP
1800 Century Park East, Suite 1500
Los Angeles, California  90067
Telephone:    +1 310 500 2090
Facsimile:    +1 310 500 2091
Email: *david.belcher@faegredrinker.com*

11         David A. Belcher is licensed to practice law in the State of California and is a member in

12  good standing with the California State Bar.

13

14  Dated:  September 6, 2022                **FAEGRE DRINKER BIDDLE & REATH LLP**

15

16                       By:  _David A. Belcher_

17                           DAVID A. BELCHER

18                           Attorneys for Defendant
19                           COOPERATIVE REGIONS OF ORGANIC
20                           PRODUCER POOLS d/b/a ORGANIC
                             VALLEY

21

22

23

24

25

26

27

28

US.352258650.01

**NOTICE OF APPEARANCE OF DAVID A. BELCHER FOR DEFENDANT COOPERATIVE
REGIONS OF ORGANIC PRODUCER POOLS D/B/A ORGANIC VALLEY**

1

## **PROOF OF SERVICE**

I, declare I am a citizen of the United States and employed by Faegre Drinker Biddle & Reath LLP.  I am over the age of eighteen years and not a party to the within-entitled action.  My business address is 1800 Century Park East, Suite 1500, Los Angeles, California  90067.  On September 6, 2022, I served a copy of the within document(s):

**NOTICE OF APPEARANCE OF DAVID A. BELCHER FOR DEFENDANT COOPERATIVE REGIONS OF ORGANIC PRODUCER POOLS d/b/a ORGANIC VALLEY**

☒      by transmitting via e-mail or electronic transmission the document(s) listed above to the person(s) at the e-mail address(es) set forth below.

| | |
|---|---|
| **SCHONBRUN SEPLOW HARRIS HOFFMAN & ZELDES LLP** | Counsel for Plaintiff AMBER TAKAHASHI-MENDOZA |
| HELEN I. ZELDES | |
| *hzeldes@sshhzlaw.com* | |
| JOSHUA A. FIELDS | |
| *jfields@sshhzlaw.com* | |
| AYA DARDARI | |
| *adardari@sshhzlaw.com* | |
| 501 W. Broadway, Suite 800 | |
| San Diego, CA 92101 | |
| Tel: (619) 400-4990 | |

| | |
|---|---|
| **PETA Foundation** | Counsel for Plaintiff AMBER TAKAHASHI-MENDOZA |
| ASHER SMITH | |
| *ashers@petaf.org* | |
| TALA DIBENEDETTO | |
| *talad@petaf.org* | |
| 2154 West Sunset Boulevard | |
| Los Angeles, CA 90026 | |
| Tel: (323) 210-2263 | |
| Fax: (213) 484-1648 | |

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on September 6, 2022, at Los Angeles, California.

_____
Caridad F. Frutos-Williams

Faegre Drinker Biddle & Reath LLP
Attorneys at Law
Los Angeles

US.352258650.01