UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMBER TAKAHASHI-MENDOZA, <br> Plaintiff, <br> v. <br> COOPERATIVE REGIONS OF ORGANIC PRODUCER POOLS, <br> Defendant. | Case No. 22-cv-05086-JST <br><br> **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS** <br><br> Re: ECF No. 15 |

Before the Court is Defendant Cooperative Regions of Organic Producer Pools d/b/a/ Organic Valley's motion to dismiss. ECF No. 15. The Court will grant the motion in part and deny it in part.

I.  **BACKGROUND**

Plaintiff Amber Takahashi-Mendoza brings claims, on behalf of herself and a putative class, under the California Consumers Legal Remedies Act ("CLRA") and Unfair Competition Law ("UCL"). ECF No. 1. For purposes of deciding this motion, the Court accepts as true the following factual allegations contained in Plaintiff's complaint.

Defendant is an organic dairy seller that sources milk from member farms. Plaintiff is a California resident who regularly purchased Defendant's dairy milk. The labels of the challenged milk products, pictured below, state that:

1. "Organic Valley's *commitment to the highest* organic standards and *animal care practices* helps make all our food delicious and nutritious";[1]

---

[1] Plaintiff only challenges the emphasized portions of each statement. To determine whether the product packaging is deceptive, the Court considers the statements in full and in context. *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 n.3 (9th Cir. 2008).

2. "*Humane Animal Practices*[:] Our organic animal care focuses on holistic health practices, including daily doses of sunshine, fresh air, and pasture";

3. "Pasture-Raised Goodness[:] Organic Valley's commitment to *high standards of animal care go above and beyond* organic standards because we know *the best milk comes from happy cows*";

4. "*We Hold Ourselves to the Highest Standards*";

5. "*Our cows are social and so are we*!"

6. "We are your neighbors, a national cooperative of real farmers *growing real food the right way*"; and

7. "Pasture-Raised with *Love*".



2






> **Introducing the FIRST ORGANIC Ultra-Filtered Milk**
>
> Organic Valley Ultra™ is a nutritious milk with 13g of protein per serving and 50% less sugar than regular milk.
>
> We start with pasture-raised milk, then filter it to concentrate the protein and calcium while reducing the sugar. The result is delicious nutrition for your whole family.
>
> **We Hold Ourselves to the Highest Standards**
>
> - **57 Quality Checks** — We ensure your milk arrives tasting as fresh as it can be.
> - **Always Organic and Non-GMO** — We never use: antibiotics, synthetic hormones, toxic pesticides or GMOs.
> - **Humane Animal Practices** — Our organic animal care focuses on holistic health practices, including daily doses of sunshine, fresh air and pasture.
> - **The Pasture-Raised Difference** — More time on pasture means our cows' milk naturally delivers omega-3 and CLA.**
> - **Keeping Chemicals Out of Your Food** — We believe our farms, our food and our families shouldn't be chemistry experiments.

*Id.* ¶¶ 22-23.[2]  Plaintiff alleges that these statements, together with the "idyllic imagery" of the labels – some of which feature images of human mothers and children and at least one of which

includes "an image of what any reasonable consumer would infer to be a mother and her calf" – would lead a reasonable consumer to infer Defendant's milk products meet the highest standards for humane treatment of dairy cows, such as those promulgated by industry certification groups A Greener World and Global Animal Partnership. *Id.* ¶ 24.

However, Defendant sources milk from farms that do not meet the highest standards for humane treatment of dairy cows in several ways. First, Defendant's member farms separate cows and calves "shortly after birth," a practice which may inflict stress upon the cows and impair their immune responses. *Id.* ¶¶ 37, 43. Second, some farms house calves individually, a practice associated with "poor growth and chronic hunger." *Id.* ¶ 55.[3] Finally, male calves are sold to commercial farms to be raised and slaughtered for meat, and, once their milk production levels drop, female cows are also slaughtered. *Id.*

Surveys show the majority of consumers agree that cows should not be separated from their calves early after birth or within a few hours of birth and that participants would pay the same or more for milk from cows not separated from their calves shortly after birth. *Id.* ¶¶ 28-32. Consumers pay a premium for Defendant's products in order to support humane farming practices, which they believe do not involve separating cows and calves shortly after birth. *Id.* ¶¶ 10, 18, 25.

When purchasing milk for house guests, Plaintiff regularly purchased Defendant's milk,

---

[2] Defendant requests that the Court judicially notice printer's proofs of current product labels for the four products whose labels are featured in the complaint. ECF Nos. 16, 17. Plaintiff disputes that these proofs accurately represent product labels in circulation in California when she relied upon them. ECF No. 22. Defendant does not dispute the accuracy of the label images featured in the complaint, which show each of the challenged statements in context, as they appear to the consumer. Because the Court does not rely on the proofs, Defendant's request for judicial notice is denied as moot.

[3] The complaint states that, "[o]n information and belief, some farms supplying Defendant rear female calves in small hutches," and provides three blurry screenshots of aerial photographs of alleged member farms sourced from Google Earth. ECF No. 1 ¶ 50. The photographs feature large rectangular structures alongside smaller round and rectangular structures that are arranged in rows. A plaintiff may plead facts alleged upon information and belief "where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible." *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017). The factual information provided in the complaint is insufficient for the Court to reasonably infer these alleged member farms are housing individual calves in the smaller structures. Because the practices of Defendant's member farms are facts within the sole possession and control of the Defendant, however, the Court will permit Plaintiff to plead this fact upon information and belief.

paying a premium to support what she believed, based on Defendant's advertising, were humane husbandry practices. Plaintiff "would not have paid a premium price for the products if she had known the true nature of Defendant's practices." *Id.* ¶ 25.

Plaintiff filed suit on July 19, 2022, in the Superior Court of California, Alameda County. ECF No. 1. Defendant removed the case to federal court on September 7, 2022, and now moves to dismiss the suit. ECF No. 15.

## II.    JURISDICTION

The Court has jurisdiction under 28 U.S.C. § 1332(d).

## III.   LEGAL STANDARD

"Dismissal under [Federal Rule of Civil Procedure] 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Facts pleaded by a plaintiff "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In determining whether a plaintiff has met this plausibility standard, the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

Because Plaintiff's CLRA and UCL causes of action are grounded in fraud, the complaint must also satisfy Rule 9(b), which requires that "identify[ing] the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018) (quoting *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055

(9th Cir. 2011)).

"Whether a business practice is deceptive is generally a question of fact that requires weighing of evidence from both sides." *Organic Consumers Ass'n v. Sanderson Farms, Inc.*, 284 F. Supp. 3d 1005, 1014 (N.D. Cal. 2018) (citing *Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 134–35 (2007)). "For that reason, courts grant motions to dismiss under the reasonable consumer test only in rare situations in which the facts alleged in the complaint 'compel the conclusion as a matter of law that consumers are not likely to be deceived.'" *Id.* (quoting *Chapman v. Skype Inc.*, 220 Cal. App. 4th 217, 226–27 (2013)). However, Plaintiff must show "more than a mere possibility that [Defendant's] label 'might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner.'" *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (quoting *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003)). "Rather, the reasonable consumer standard requires a probability 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" *Id.* (quoting *Lavie*, 105 Cal. App. 4th at 508).

## IV. DISCUSSION

Plaintiff alleges that Defendant engaged in deceptive marketing practices in violation of the UCL and CLRA. Plaintiff additionally alleges that Defendant's business practices are unlawful under the UCL because Defendant's animal husbandry practices violate California Penal Code § 597, which criminalizes cruelty to animals.

### A. Equitable Relief

#### 1. Standing to Seek Injunctive Relief

Defendant argues Plaintiff lacks Article III standing to seek injunctive relief. In the Ninth Circuit, "[a] previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase," where she plausibly alleges that "she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to" or that "she might purchase the product in the future, despite the fact that it was once marred by false advertising . . . as she may reasonably, but incorrectly, assume the

7

1  product was improved." *Davidson*, 889 F.3d at 969-70.

2      Plaintiff alleges she "would consider purchasing Defendant's milk again if Defendant were
3  to treat cows in a manner consistent with its advertising." ECF No. 1 ¶ 11. This allegation is
4  sufficient to confer Article III standing. *Davidson*, 889 F.3d at 970-71 (ruling that plaintiff had
5  standing where she "would purchase truly flushable wipes"); *Zeiger v. WellPet LLC*, 526 F. Supp.
6  3d 652, 688 (N.D. Cal. 2021) (ruling that plaintiff had standing where he "open to" purchasing
7  products if issues were remedied).[4]

### 2. Adequate Remedy at Law

    Defendant argues the Court must dismiss Plaintiff's claims for equitable relief because she does not allege that her claim for money damages under the CLRA is inadequate. Under "traditional principles governing equitable remedies in federal courts," Plaintiff "must establish that she lacks an adequate remedy at law" before securing equitable relief under the UCL and CLRA. *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). "[M]ost district courts applying *Sonner* have . . . 'understood it to require that a plaintiff must, at a minimum, *plead* that she lacks adequate remedies at law if she seeks equitable relief.'" *Johnson v. Trumpet Behavioral Health, LLC*, No. 21-cv-3221-WHO, 2022 WL 74163, at *3 (N.D. Cal. Jan. 7, 2022) (emphasis in original) (quoting *Guthrie v. Transamerica Life Ins. Co.*, 561 F. Supp. 3d 869, 875 (N.D. Cal. 2021)); *Hrapoff v. Hisamitsu Am., Inc.*, No. 21-cv-1943-JST, 2022 WL 2168076, at *6 (N.D. Cal. June 16, 2022). Plaintiff does not plead that she lacks an adequate remedy at law. As such, the Court will dismiss Plaintiff's claims for equitable relief with leave to amend.

### B. Statutory Relief

### 1. Standing

    Defendant argues that Plaintiff lacks statutory standing because she fails to properly plead

---

[4] Defendant argues that *Lanovaz v. Twinings N. Am., Inc.*, 726 F. App'x 590 (9th Cir. 2018) (Mem.) forecloses this conclusion. The *Lanovaz* panel ruled that the plaintiff lacked standing because there was insufficient and conflicting evidence of risk of future harm: the plaintiff stated at a deposition that she would not purchase defendant's products again, but stated in response to an interrogatory that she would "consider" doing so. There is no such conflicting evidence here.

8

1    economic injury. To sue under the CLRA and UCL, Plaintiff must "allege that she was exposed to
2    false information about the product purchased, which caused the product to be sold at a higher
3    price, and that she 'would not have purchased the goods in question absent this
4    misrepresentation.'" *Davidson*, 889 F.3d at 966 (quoting *Hinojos v. Kohl's Corp.*, 718 F.3d 1098,
5    1105 (9th Cir. 2013)).

6    Plaintiff alleges that Defendant misleadingly marketed its products as "humane," a
7    characteristic associated with a price premium. ECF No. 1. Plaintiff alleges that she purchased
8    Defendant's milk because, "after seeing Defendant's advertising on its milk cartons," she
9    "believed Defendant's milk came from cows treated in a humane manner," and that, "[h]ad she
10   known the truth, she would not have paid premium prices for Defendant's milk or would not have
11   purchased it at all." *Id.* ¶ 10. Plaintiff alleges that she and others who purchase Defendant's milk
12   "are told they are supporting humane farming practices and pay premium prices for doing so." *Id.*
13   ¶ 2. These allegations are sufficient to establish that Plaintiff has suffered an economic injury for
14   the purposes of statutory standing under the CLRA and UCL. *See Reid v. Johnson & Johnson*,
15   780 F.3d 952, 958 (9th Cir. 2015) (finding allegation that consumer "would not have been willing
16   to pay as much . . . if anything, had he not been misled" sufficient for statutory standing).

17   **2.   Deceptive Statements**

18   Plaintiff alleges that the milk product labels are deceptive because the challenged
19   statements on the product labels, when considered alongside the "idyllic imagery" of the labels –
20   some of which feature images of human mothers and children and at least one of which includes
21   "an image of what any reasonable consumer would infer to be a mother and her calf" – would lead
22   a reasonable consumer to infer Defendant's milk products meet the highest standards set by certain
23   third-party certification groups for humane treatment of dairy cows, ECF No. 1 ¶ 24, or are
24   contrary to consumer expectations regarding the humane treatment of cows, *id.* ¶ 25.

25   Defendant argues that the challenged statements are not actionable statements of fact and
26   are not deceptive.

27   **a.   Whether Statements Are Actionable**

28   "A statement that is quantifiable, that makes a claim as to the 'specific or absolute

9

characteristics of a product,' may be an actionable statement of fact while a general, subjective claim about a product is non-actionable puffery." *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1053 (9th Cir. 2008) (quoting *Cook, Perkiss, & Liehe v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246 (9th Cir. 1990)). Puffery includes "product superiority claims that are vague or highly subjective" and "exaggerated advertising, blustering, and boasting upon which no reasonable buyer would rely." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997). "Whether a statement is puffery or a representation of fact is a question of law that can be properly decided on a motion to dismiss." *Ahern v. Apple Inc.*, 411 F. Supp. 3d 541, 555 (N.D. Cal. 2019).

Several of the statements Plaintiff challenges make unmeasurable, subjective claims about Defendant's products on which no reasonable buyer would rely. Considered in context, "growing real food the right way," "Pasture-Raised with *Love*,"[5] "the best milk comes from happy cows," and "[o]ur cows are social and so are we"[6] are unmeasurable opinions. *See Consumer Advocs. v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1361 (2003) ("crystal clear" and "CD quality" are "boasts, all-but-meaningless superlatives . . . which no reasonable consumer would take as anything more weighty than an advertising slogan" and therefore not actionable); *People for the Ethical Treatment of Animals v. Whole Foods Mkt. Cal., Inc.*, No. 15-cv-4301-NC, 2016 WL 1642577, at *3 (N.D. Cal. Apr. 26, 2016) ("Great-Tasting Meat From Healthy Animals" and "Raised Right Tastes Right" are not quantifiable, objective statements and therefore not actionable); *Myers-Taylor v. Ornua Foods N. Am., Inc.*, No. 3:18-cv-01538-H-MDD, 2019 WL 424703, at *4 (S.D. Cal. Feb. 4, 2019) (images of cows accompanied by statement about "happy

---

[5] Plaintiff does not challenge the use of the term "pasture-raised," but only the use of the term "love." ECF No. 1.

[6] In opposition, Plaintiff argues that two dictionary definitions of the word "social" provide an objective standard that Defendant's practices do not meet. ECF No. 21 at 20 (defining "social" as "tending to form cooperative and interdependent relationships with others" and "living and breeding in more or less organized communities especially for the purposes of cooperation and mutual benefit: not solitary"). The definitions Plaintiff offers do not provide a usable standard for defining a social cow. Further, no reasonable consumer would interpret the phrase, "Our cows are social and so are we," when followed immediately by several logos for social media networks, to mean that the cows are never alone.

grass-fed cows" constitutes non-actionable puffery); *Perez v. Bath & Body Works, LLC*, No. 21-CV-05606-BLF, 2022 WL 2756670, at *5 (N.D. Cal. July 14, 2022) (dismissing claims about a statement as non-actionable puffery because "[l]ove [is] a subjective emotion"). Considering the challenged product labels in their entirety, the Court finds that these statements constitute non-actionable puffery.

The remaining statements, considered in context, are actionable statements of fact. Whether Defendant observes "Humane Animal Practices" in its milk production does not amount to puffery. *See Animal Legal Defense Fund v. HVFG LLC*, 939 F. Supp. 2d 992 (N.D. Cal. 2013) (finding that the term "humane" was susceptible to definition, such that "[a] claim that [a] product is 'the humane choice' might therefore constitute a statement that could either be proved false or 'reasonably interpreted as a statement of objective fact'"). While statements about a party's "commitment to the highest . . . standards" or use of "high standards" may amount to puffery, considering the statements in context renders them more definite. Plaintiff only challenges select phrases from these statements: "Organic Valley's *commitment to the highest* organic standards and *animal care practices* helps make all our food delicious and nutritious" and "Pasture-Raised Goodness[:] Organic Valley's commitment to *high standards of animal care go above and beyond* organic standards." ECF No. 1 ¶¶ 23-24. The label itself thus communicates that Defendant's products meet or exceed organic standards and practices. This is a measurable, objective claim. "We Hold Ourselves to the Highest Standards" is similarly definite, as it is immediately followed by a list of five standards: (1) "57 Quality Checks[:] We ensure your milk arrives tasting as fresh as it can be."; (2) "Always Organic and Non-GMO[:] We never use antibiotics, synthetic hormones, toxic pesticides or GMOs."; (3) "Humane Animal Practices[:] Our organic animal care focuses on holistic health practices, including daily doses of sunshine, fresh air[,] and pasture."; (4) "The Pasture-Raised Difference[:] More time on pasture means our cows' milk naturally delivers omega-3 and CLA."; (5) "Keeping Chemicals Out of Your Food[:] We believe our farms, our food and our families shouldn't be chemistry experiments." These statements, in context, are not puffery.

b. **Whether Statements Are Deceptive**

1    Whether the remaining statements are deceptive is governed by the "reasonable consumer"
2    test. *Williams*, 552 F.3d at 938 ("[U]nless the advertisement targets a particular disadvantaged or
3    vulnerable group, it is judged by the effect it would have on a reasonable consumer.") (quoting
4    *Lavie*, 105 Cal. App. 4th at 506-07). "Under the reasonable consumer standard, [plaintiff] must
5    'show that "members of the public are likely to be deceived"'" by the product label. *Id.* (quoting
6    *Freeman v. Time*, 68 F.3d 285, 289 (9th Cir. 1995)). "[W]hether a business practice is deceptive
7    will usually be a question of fact not appropriate for decision on demurrer." *Id.* Courts grant
8    motions to dismiss on this ground only where "the advertisement itself ma[kes] it impossible for
9    the plaintiff to prove that a reasonable consumer [is] likely to be deceived," *Williams*, 552 F.3d at
10   939, or where the facts alleged otherwise "compel the conclusion as a matter of law that
11   consumers are not likely to be deceived," *Chapman*, 220 Cal. App. 4th at 226-27.

12   Plaintiff challenges as deceptive Defendant's statement that "Organic Valley's *commitment
13   to the highest* organic standards and *animal care practices* helps make all our food delicious and
14   nutritious." Plaintiff does not allege that Defendant does not meet the highest organic standards or
15   animal care practices, but rather that this statement would lead a reasonable consumer to believe
16   that Defendant is committed to "the highest . . . animal care practices," which Plaintiff defines as
17   the minimum standards set by third-party certification groups and which Plaintiff alleges
18   Defendant does not meet. Plaintiff's complaint supports this allegation by reference to survey data
19   showing that "76 percent of consumers shopping at conventional grocery stores, and 87 percent of
20   consumers at premium/natural grocery stores, including consumers of dairy products, say they are
21   concerned about the welfare of animals raised for food." ECF No. 1 ¶ 20 (citing Bob Meadow &
22   Meryl O'Bryan, Lake Research Partners, *Results from a Survey of American Consumers*, 2 (Feb.
23   1, 2019), https://www.aspca.org/sites/default/files/aspca-2018_animal_welfare_labelling_and_
24   consumer_ concern_survey.pdf.). Plaintiff further cites survey data that suggests "low acceptance
25   of any cow-calf management system involving early separation" and that consumers consider "that
26   early separation was a breach of [the] standard of care owed to both cows and calves." ECF No. 1
27   ¶ 31 (quoting Lara V. Sirovica et al., *Public Attitude Toward and Perceptions of Dairy Cattle
28   Welfare in Cow-Calf Management Systems Differing in Type of Social and Maternal Contact*, 105

1  J. of Dairy Sci. 3248, 3248, 3265 (2022), https://doi.org/10.3168/jds.2021-21344).  Plaintiff also
2  alleges that survey data shows consumers are willing "to pay the same or more for milk from cows
3  who were not separated from their calves prematurely," *id.* ¶ 31 (citing Sirovica, *supra*, at 3258-
4  65), and that survey participants characterized "premature maternal separation as 'unnatural,'
5  'unacceptable,' 'inhumane,' and 'cruel,'" *id.* (citing Sirovica, *supra*, at 3261-63).

In evaluating these claims, the Court takes guidance from *Sultanis v. Champion Petfoods USA Inc.*, No. 21-cv-00162-EMC, 2021 WL 3373934 (N.D. Cal. Aug. 3, 2021).  There, the defendant's chicken products used labels featuring "chicken icons with the descriptor 'free-run chicken,' and depicted chickens outdoors on grass." *Id.* at *1.  The defendant's website similarly "state[d] that[,] '[r]aised under the highest standards for animal care and food safety by people we know and trust, on family-run American farms, our free-run poultry and cage-free eggs are nourishing, natural, and antibiotic free." *Id.*  The plaintiff alleged that, based on these statements, she and other reasonable consumers "expected the poultry Products were made with chickens 'raised in better, more humane conditions than typical chickens grown for meat,' and that 'have access to the outdoors,'" but that, in reality, defendant's poultry products were "made from 'factory-farmed birds raised under standard industrial conditions—confined in crowded barns without outdoor access.'" *Id.* (quoting complaint).  She contended that she and putative class members were harmed by purchasing defendant's poultry products under false pretenses and paying more for them than they otherwise would have. *Id.*  The *Sultanis* court found that the plaintiff had plausibly alleged that the defendant's statements were misleading because "[t]he term 'free-run,' on its own, could reasonably be read to imply that the chickens used to make the Products can freely run outside, especially because the Products' label also depicts chicken running freely on a spacious, grassy, and outdoor field without any disclaimer that those are not the chickens used to make the Products." *Id.* at *9.

So here, the Court concludes that Plaintiff has plausibly alleged that a reasonable consumer could find Defendant's claim about its "commitment to the highest . . . animal care practices" is misleading because consumers could plausibly expect that such practices would not include the early separation of mother and calf.  Defendant's motion to dismiss is therefore denied as to that

13

1    statement. For similar reasons, the Court denies Defendant's motion to dismiss as to the phrase
2    "Pasture-Raised Goodness[:] Organic Valley's commitment to *high standards of animal care go*
3    [sic] *above and beyond* organic standards." While the Court does not find it plausible that a
4    reasonable consumer would interpret "high standards of animal care [that] go above and beyond"
5    to refer to the minimum standards for humane treatment of dairy cows set by certain third-party
6    certification groups, *cf. Sultanis*, 2021 WL 3373934, at *9 (finding it implausible that consumers
7    would be aware of Canadian trade organizations' definition of a phrase), the statement about "high
8    standards of animal care" potentially runs afoul of consumer expectations regarding the early
9    separation of calves from their mothers.

10   However, the Court will grant Defendant's motion to dismiss as to the statement "*Humane*
11   *Animal Practices*[:] Our organic animal care focuses on holistic health practices, including daily
12   doses of sunshine, fresh air, and pasture." Plaintiff challenges only the phrase "Humane Animal
13   Practices," alleging that a reasonable consumer would understand this language to mean that
14   Defendant's member farms do not separate cows and calves shortly after birth or house calves
15   individually – practices that do not meet the standards for humane treatment of dairy cows set by
16   certain certification groups. Plaintiff alleges that, because Defendant does separate calves from
17   cows shortly after birth, Defendant's statement that the product is produced using "Humane
18   Animal Practices" is misleading. But Plaintiff does not plausibly allege that a reasonable
19   consumer would interpret "Humane Animal Practices" independently of the text that immediately
20   follows it, which describes these practices as "organic animal care focus[ing] on holistic health
21   practices, including daily doses of sunshine, fresh air, and pasture." Reading the statement in
22   context, a reasonable consumer is likely to interpret the text that follows as an explanation of
23   Defendant's commitment to "Humane Animal Practices."

24   The Court will similarly grant Defendant's motion to dismiss as to the statement "We Hold
25   Ourselves to the Highest Standards," which is followed by a list of five standards: "57 Quality
26   Checks," "Always Organic and Non-GMO," "Humane Animal Practices," "The Pasture-Raised
27   Difference," and "Keeping Chemicals Out Of Your Food." Each standard is then followed by
28   further description of how Defendant meets that standard. Plaintiff does not plausibly allege that a

14

reasonable consumer is likely to interpret "We Hold Ourselves to the Highest Standards" independently of the list of standards that follows that title. Rather, a reasonable consumer is likely to read the statement in context and interpret the list of standards that follows the title as the "Highest Standards" to which the title refers.

### C.     Section 597(b) Violation

Defendant argues that Plaintiff's UCL claim based on violation of Penal Code § 597(b) must be dismissed. The UCL "prohibits any unfair competition, which means 'any unlawful, unfair or fraudulent business act or practice.'" *In re Pomona Valley Med. Grp.*, 476 F.3d 665, 674 (9th Cir. 2007) (quoting Cal. Bus. & Prof. Code § 17200, *et seq.*). The UCL "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012) (quoting *Cel-Tech Comms., Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999)).

Plaintiff alleges that the animal husbandry techniques practiced by Defendant's member farms violate Section 597(b), such that Defendant engages in unlawful business practices in violation of the UCL. "[T]o state a claim under the unlawful prong of the UCL, a plaintiff must sufficiently plead a predicate violation." *MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d 1087, 1097 (N.D. Cal. 2014). Penal Code § 597(b) reads, in relevant part:

> Every person who . . . tortures, torments, deprives of necessary sustenance, drink, or shelter . . . or causes or procures any animal to be so . . . tortured, tormented, deprived of necessary sustenance, drink, or shelter . . . ; and whoever, having the charge or custody of any animal . . . subjects any animal to needless suffering, or inflicts unnecessary cruelty upon the animal, or in any manner abuses the animal, or fails to provide the animal with proper food, drink, or shelter or protection from the weather . . . is, for each offense, guilty of a crime.

Cal. Penal Code § 597(b). Section 597(b) imposes criminal liability for grossly negligent conduct that recklessly exposes a cared-for animal to a high risk of death or great bodily injury. *People v. Riazati*, 195 Cal. App. 4th 514, 531-32 (2011).

The complaint does not allege that Defendant was grossly negligent in its animal husbandry practices or that such practices placed cows at high risk of death or great bodily injury. Plaintiff alleges that Defendant violates Section 597(b) by separating cows and their calves after

birth and "prior to natural weaning," housing calves individually, and – because studies find that calves raised in "insufficient social environments" consume less milk – depriving such calves of adequate sustenance. ECF No. 1 ¶ 86. Plaintiffs do allege that separating cows and calves after birth places the animals under stress, which may increase susceptibility to illness, while housing calves in isolation is associated with various behavioral and developmental issues. *Id.* ¶¶ 38-43, 51, 54-56. But Plaintiff pleads no facts to suggest that any of these practices place the cows at a high risk of either death or great bodily injury.

Plaintiff suggests that, because the UCL itself imposes strict liability, she should not be "required to plead *mens rea* as if this were a criminal proceeding." ECF No. 21 at 31. But Plaintiff cites no authority to suggest that a plaintiff pleading a violation of the penal code as a predicate offense for a UCL claim is exempt from pleading certain elements of the predicate offense, and this Court is not aware of any. Accordingly, the Court finds that Plaintiff fails to sufficiently plead the elements of Section 597(b), as required to establish a predicate violation for the purposes of the UCL. This claim is dismissed with leave to amend.

## CONCLUSION

The Court grants in part and denies in part Defendant's motion to dismiss. The Court grants leave to amend Plaintiff's CLRA and UCL claims based on the labeling statements identified above. Plaintiff's UCL claim based on violation of Penal Code § 597(b) is dismissed with leave to amend. Leave is granted solely to cure the deficiencies identified above. Any amended complaint shall be filed within 28 days of this order.

**IT IS SO ORDERED.**

Dated: May 19, 2023

_____
JON S. TIGAR
United States District Judge